In re NOMINATION PETITION OF Charles COOPER, as a Candidate for the Democratic Nomination for Senator in the General Assembly from the Second District,

Appeal of Harvey M. RICE, Petitioner.

Commonwealth Court of Pennsylvania.

Argued March 25, 28 and 29, 1994.
Decided April 18, 1994.
Publication Ordered May 31, 1994.

S. David Fineman, for petitioner.

Charles Cooper, respondent, pro se.

DOYLE, Judge.

Before the Court is a petition to set aside the nomination petition of Charles Cooper, a candidate for the Democratic Nomination for Senator in the General Assembly from the Second District (Philadelphia), by Harvey M. Rice (Petitioner) another candidate for that office. The challenge is made under Section 977 of the Pennsylvania Election Code (Code), Act of June 3, 1927, P.L. 1333, *as*

*amended,* 25 P.S. § 2937.[1] A full hearing was conducted conducted over the course of three days, concluding at 1:00 a.m. on March 29, 1994. At the conclusion of the hearings the parties were granted permission to file supporting memoranda of law.

Cooper's nomination petition, filed on February 22, 1994, contained 854 signatures on twenty-four pages. The State Bureau of Elections struck 12 signatures when the nomination petition was filed in Harrisburg, leaving 842 signatures.[2]

Petitioner argues that the nomination petition must be set aside because (1) Cooper has not resided in the Second Senatorial District and within the Commonwealth of Pennsylvania for the requisite period of time required by the Pennsylvania Constitution; (2) Cooper failed to obtain 500 valid signatures required for nomination, challenging 566 of the signatures of the 842 total accepted by the Bureau; (3) the circulator's affidavits on the twenty-four pages of the petition to nominate are null and void because they were notarized by Cooper's niece. We will address each argument *seriatim.*

## I. *RESIDENCY*

Petitioner first argues that Cooper's nomination petition should be set aside because he has not satisfied the requirements of residency.

■ The Petition to Set Aside alleged:

Charles Cooper pursuant to Pennsylvania Constitution, ARTICLE II, Section 5 ("Senators shall be at least twenty-five years of age. They shall have been citizens and inhabitants of the State four years, and inhabitants of their respective districts one year next before their election (unless absent on the public business of the United States or of this State) and shall reside in their respective district during their terms of service.") is ineligible to seek this office for he will not be a bona fide resident of the Second Senatorial District one year prior to the election, November 8, 1994.

Petition to Set Aside ¶ 6. During the hearing, and after a discussion of the Supreme Court's opinion *In Re Jones,* 505 Pa. 50, 476 A.2d 1287 (1984) (which holds that a *court* may not make a determination of whether a candidate meets the constitutional requirements for the office of a state senator on constitutional grounds alone), Petitioner moved to amend his petition to allege that Cooper made false statements in his candidate's affidavit, to wit:

The candidate's affidavit, filed by Charles Cooper with the Nomination Petition, contains a material defect or error to the extent that it attests that Charles Cooper (1) is and will be an inhabitant of the Second Senate District for one year prior to the general election and (2) is an will be an inhabitant of Pennsylvania for four years before the general election.

Amended Petition to Set Aside ¶ 10. This motion was taken under advisement by the Court. We now grant that motion for the following reasons.

■ The allowance of amendments, of course, is within the discretion of this Court. *Appeal of Beynon,* 370 Pa. 532, 88 A.2d 789 (1952). Cooper was on notice that his residency was at issue in Petitioner's challenge. This amendment merely changes the *legal* basis for Petitioner's argument that the nomination petition must be set aside. *See Nomination Petition of Lefkowitz,* 102 Pa.Commonwealth Ct. 93, 516 A.2d 1297 (1982) (citing with approval *Katz Nomination Papers,* 65 Pa.D & C 13 (Dauphin County 1948), wherein Judge Woodside distinguished factual amendments and legal amendments, holding that amendments raising legal challenges could be permitted, while factual challenges

1. Section 977 provides in relevant part:

If the Court shall find that said nomination petition or paper is defective ... or does not contain a sufficient number of genuine signatures of electors entitled to sign the same under the provisions of this act, or was not filed by persons entitled to file the same, or if any accompanying or appended affidavit contains a material defect or error, it shall be set aside....

2. Petitioner, in his tally in his petition counted 854 signatures, failing to take into account the signatures not counted by the Bureau. Cooper has not challenged those strikes in any way, nor attempted to amend the stricken signatures; therefore they will not be counted.

generally should not be permitted because of prejudice to the candidate/respondent). Accordingly, Petitioner's motion to amend his petition in this regard is granted, and the merits of this challenge will be addressed.

■ A false candidate's affidavit is a fatal defect which cannot be amended. *Nomination of Cianfrani*, 467 Pa. 491, 359 A.2d 383 (1976). Accordingly, if statements sworn to on the affidavit are found to be false, the nomination petition must be set aside. *Id.; see also* Section 977 of the Code, 25 P.S. § 2937.

> The affidavit provides, in relevant part: I do swear (or affirm) that my residence, my election district and the title of the office for which I desire to be a candidate are as specified above, that I am eligible for said office ...; that if I am a candidate for the General Assembly, I will satisfy the eligibility requirements of Article II, Sections 5 and 7 of the Pennsylvania Constitution; that unless absent on public business of the United States or this state, I shall have been a citizen and an inhabitant of Pennsylvania for four years and an inhabitant of the electoral district specified above one year next before the election; ...[3]

■ The heavy burden of proving that Cooper is not an inhabitant of the senate district he seeks to represent rests squarely on the Petitioner, as the objector to the nomination petition. *Nomination Petition of Street*, 102 Pa.Commonwealth Ct. 155, 516 A.2d 791 (1986). Thus, Petitioner must prove that Cooper is *not* a resident of the district in question; Cooper did not have to prove that he is. *Id.* Hence, if the Petitioner proves that Cooper was either not an inhabitant of the Second Senatorial District for one year prior to the forthcoming general election on November 8, 1994, or that he was not a citizen and inhabitant of Pennsylvania for four years prior to that election, we must set aside Cooper's nominating petition.[4] *Id.*

**3.** This language is drawn from Section 910 of the Code, 25 P.S. § 2870.

**4.** The triggering date for the one-year residency in the senate district is November 7, 1993; for residency in Pennsylvania the triggering date is November 7, 1990.

## A. *Inhabitance in the Electoral District*

■ At the hearing Petitioner called Charles Cooper as on cross-examination and also offered the testimony of Councilman Joseph C. Vignola. Cooper later testified on his own behalf and presented the testimony of Louis and Claire DiLonardo, and Donna Wagner.

Petitioner alleges that Cooper was not an inhabitant of the address, 1644 Granite Street, as stated on the candidate's affidavit, but was in inhabitant of either 7236 Marsden Street, or 10903 Carey Place, both of which are located in Philadelphia, but outside the Second Senatorial District.

Cooper testified emphatically that he abandoned his residence of 32 years at 7236 Marsden Street in June 1992, as a consequence of a permanent separation from his wife. There were certain bills, etc., that were still in his name because he was in the process of divorce proceedings, but clearly this domicile was abandoned, and there was no evidence presented which would indicate that Cooper had any intention of ever returning.

After a period of time spent in New Jersey (which will be discussed in more detail below), Cooper testified that he moved back to Philadelphia, to 1644 Granite Street, in a house owned and occupied by his nephew Louis DiLonardo and his wife Claire, on September 13, 1993. Cooper testified that he went to the Department of Transportation to update his driver's license on October 27, 1993, although he did not receive the address update until December 28, 1993.

Some of Cooper's testimony was corroborated by both DiLonardos and another niece of the candidate, Linda Wagner.[5] The DiLonardo's testified that Cooper lived in a bedroom in their house, mail was delivered to him, and that he often eats his meals with

**5.** Claire DiLeonardo testified that her testimony would be identical to testimony given previously by her husband concerning the date and circumstances of Cooper's residence at Granite Street.

the family. Wagner testified that when she needed to contact her uncle, she telephoned him at the Granite Street address.[6]

There was also testimony that Cooper used an address on Carey Street, Philadelphia, also outside the senate district, because he put that in a resume he submitted to the members of the Philadelphia City Council as an application for appointment to a police advisory board in November of 1993. Cooper testified that he used this address, the home of his niece Donna Wagner, because Wagner did clerical work for him and could respond to any correspondence received regarding his application. Councilman Vignola, in his testimony, stated that a specific residence was not a requirement for membership on the advisory board.

While this Court is not convinced that Cooper's testimony was, in all respects on this issue, totally credible, this Court concludes that Petitioner has not met his burden of proving by a preponderance of the evidence that Cooper did not live in the Second Senatorial District beginning September 13, 1993. There was absolutely no proof that he resided anywhere else, and Cooper's testimony on cross-examination was unshakable. *See Street.* Accordingly his nomination petition will not be set aside on this basis.

This case is distinguishable from the factual scenario presented by *Nomination Petition of Carabello,* 102 Pa.Commonwealth Ct. 129, 516 A.2d 784 (1984). In *Carabello* the candidate attempted to establish inhabitance at a residence in a home where his mother and aunt lived and where he visited frequently and maintained a room where he sometimes spent the night. At the same time he owned a residence where his wife and child lived. We held that maintaining a room in a house and sometimes sleeping there does not establish domicile. *Id.* Unlike *Carabello,* evidence of Cooper's inhabitance in the Second Senatorial District was not controverted by evidence that he was domiciled elsewhere.

**B. *Inhabitance in Pennsylvania***

■ Petitioner also alleges that Cooper's affidavit is defective because he has not resided in Pennsylvania for four years. After reviewing the evidence adduced at the hearings, this Court concludes that Cooper was not an inhabitant of Pennsylvania for four years before the election, and that his candidate's affidavit is therefore defective.

Cooper testified that he left his home of thirty-some years on Marsden Street in Philadelphia, in June of 1992 when he and his wife permanently separated. He then moved to 3100 Rhawn Street and rented a basement apartment. He produced no rent receipts or canceled checks, because he had no checking account at the time.[7] Sometime in October of 1992 he gave up his apartment on Rhawn Street and moved to Wildwood, New Jersey until September of 1993. Cooper testified

---

6. This corroboration is even more persuasive as all three of these witnesses were sequestered during Cooper's testimony.

7. The testimony of Candidate establishing this chronology is as follows:
 THE COURT: You separated from you wife in June of 1992?
 MR. COOPER: Yes.
 THE COURT: And you left 7236 Marsden Street?
 MR. COOPER: Yes, sir.
 THE COURT: And where did you go?
 MR. COOPER: I went to 3100 Rhawn Street.
 THE COURT: What is at 3100 Rhawn Street?
 MR. COOPER: It's a basement apartment.
 . . . .
 By MR. FINEMAN:
 Q: An you rented that from Bob Smith?
 A: Yes.
 Q: So you paid some rent.
 A: Yes.

 Q: Do you have copies of your canceled checks, where you paid him?
 A: No.
 . . . .
 Q: You don't think it was important to have any checks for that?
 A: I had no checking account, Counselor.
 . . . .
 Q: Let's go to 1993 and see if you had a checking account. . . .
 . . . .
 THE COURT: Wait. Let's get where he was, when. All right. You're jumping ahead to 1993. He is still on Rhawn Street. Where did he go from there?
 BY MR. FINEMAN
 Q: Did you go down to some place at the Jersey shore?
 A: I was invited by a friend that owned property in Wildwood to come down to Wildwood and I did.
 Notes of Testimony 3/25/94 at 21–24.

that he lived for free as the guest of a friend and did not work, paid no rent, and received no worker's compensation or unemployment compensation benefits. Furthermore, Cooper testified he received no social security, disability, pension or any other income whatsoever.[8]

Cooper often travelled back to Philadelphia during this period of time, sometimes several days a week, to participate in various civic activities and to visit friends.[9] But all of these visits were transitory. As evidenced by his voter registration affidavit for Marsden Street, in November 1992, he voted in the general election. And Marsden Street, as we noted above, is NOT within the Second Senatorial district. There is no evidence that he voted in the spring primary in 1993 nor in the November 1993 municipal election. *See* Exhibit P–8; Notes of Testimony 3/25/94 at 61.[10] In September 1993, almost one year after he went to New Jersey, he permanently returned to Pennsylvania by moving in with his nephew and his wife on Granite Street.

In review, Cooper's movements can be summarized as follows: In June 1992 Cooper left the family home as a consequence of the permanent separation from his wife. From June 1992 until October 1992, he lived in an apartment on Rhawn Street. In October 1992 he moved out of Rhawn Street and went to Wildwood, New Jersey, where he resided until he moved back to Philadelphia, to 1644 Granite Street, in September 1993.

Having established these facts, guidance for determining the "inhabitance" of a candidate can be found in *In re Lesker,* 377 Pa. 411, 105 A.2d 376 (1954). In *Lesker* Justice Musmanno distinguished "domicile," as the most permanent type of residence, from "residence," a place where one stays for some special purpose, and from "habitation," a place where one stays as a place of temporary sojourning. *Id.* But, since domicile is the most permanent type of residence, we have interpreted "inhabitance" in the candidate's affidavit to be the equivalent of domicile, *Street,* and have not equated that term with "habitation," an "abode for the moment."

Establishing a domicile carries with it a component of intent, that is, the place where one declares that he intends to remain more or less permanently, *Street,* and also a component of objective manifestation of such intent. *Lesker.* Thus, merely declaring that a place is a permanent residence does not satisfy the definition. *Id.* Domicile is presumed to continue until another is acquired, and a person can only claim one location at a time as a domicile. *Id.*

---

**8.** Specifically Candidate testified as follows:

> Q: So, in other words, as I understand your testimony, you had no source of income, you paid nobody rent and you lived with a friend:
> A: Exactly.

Notes of Testimony, 3/25/94 at 24.

> Q: And when you moved in October of 1992, and I just want to make sure I understand, the entire time we established you were at the shore, you had no source of income and you paid out money to no one and anything you got were gifts?
> A: It didn't cost me anything, Counselor, I lived with a friend. I had no needs. I had no bills. I had no mortgage, no rent. I had no car payments. I had no loans. I had nothing. So, therefore, you know, what income did I need?

Notes of Testimony, 3/25/94 at 26.

> Q: So, basically ... now your testimony today in front of the judge is that [your friend in New Jersey] gave you for free, for free, absolutely for nothing, a place to live, food, and maybe some money to spend now and then?
> A: Never gave me money.

Notes of Testimony, 3/25/94 at 33.

**9.** Cooper's testimony, in the opinion of the Court, relative to the amount of time he was spending in Pennsylvania and New Jersey, was evasive:

> Q: For how long were you [in New Jersey]?
> A: About a year.
> Q: About a year?
> A: Yes.
> Q: And during that year period of time, you slept at one particular place?
> A: No. But I would be back in Philadelphia may a couple of days a week, two days a week, or I would stay at my nephew's, but I was also involved with civic associations in the Northeast and I maybe had a meeting with them or would come back.
> As far as me living in Wildwood, New Jersey, seven days a week, 24 hours a day, no. I came back to visit in Philadelphia.
> Q: As I understand your testimony, you were there approximately five days a week most of the time?
> A: Five, some weeks, two some weeks, seven some weeks, you know....

**10.** Cooper's voter registration was not updated until January 1994.

After reviewing the evidence, I must conclude that Cooper has not maintained a domicile in Pennsylvania for four years prior to November 8, 1994, and therefore his candidate's affidavit is fatally defective and must be set aside. *Cianfrani; Street.*

Section 704(d) of the Election Code, 25 P.S. § 2814(d),[11] provides that:

> The place where the family of a married man or woman resides shall be considered and held to be his or her place of residence, except where the husband and wife have actually separated and live apart, in which case the place where he or she has resided for two months or more shall be considered and held to be his or her place of residence.

Consequently, when Cooper's relationship with his wife was broken and severed and the family home fractured, there arose a rebuttable presumption that the family home was no longer Cooper's residence. Section 704(d). Thus, Rhawn Street became Cooper's residence as he lived there for at least two months.[12]

11. While technically Section 704 of the Code is used to determine the residence of a "person desiring to register or vote," there is no reason not to apply it to determine residency election qualifications.

12. Cooper lived at Rhawn Street from June 1992, when he separated from his wife, until October 1992 when he gave it up to go to New Jersey.

13. Cooper testified:

> Well, really, because at the time [January 31, 1992 and December 28, 1993] I had no permanent residence. I didn't intend to stay in Wildwood for the rest of my life. I thought of it more as a vacation and a place to get my head together. When I made my residency permanent is [when I updated my driver's license]. When I moved into 1644 Granite Street, September 13th, and I made that my permanent residency, is when I changed my driver's license, voter registration and all my mail came to that address from my attorney. There was no need prior to that.

Notes of Testimony, 3/25/94 at 68–69.

14. His driver's license was in the Marsden Street address until he changed it to the Granite Street address. *See* discussion *supra.*

15. Cooper testified:

Next, we consider Section 704(f) of the Election Code, which provides that:

> [i]f a person removes to another state with the *intention of remaining there an indefinite time* and making such state his place of residence, he shall be considered to have lost his residence in this State, notwithstanding he may entertain an intention to return at some indefinite future period.

25 P.S. § 2814(f) (emphasis added).[13] It is obvious that Cooper did not return to his apartment at Rhawn Street after October 1992. He never testified that he even intended to return to Rhawn Street. Although he testified that he returned to Philadelphia from time to time during the period of October 1992—September 1993, he never pinpointed where he went or for how long he stayed. When asked, he could present no indicia of residence in Pennsylvania for this period of time, such as a driver's license [14] or a tax return.[15]

Even though he may not have intended to become a *permanent* resident in New Jersey he certainly intended it to be his temporary home/residence/domicile, and his testimony

Q: The last number in my subpoena ... I asked you to bring with you any and all documents and records that state, refer or relate to or identify you residences for the years 1990, 1991, 1992, 1993 and 1994.
Do you have anything with you?
A: For those years?
Q: Yes.
A: I have my driver's license for 1993, my voter's registration. I have an old license for Marsden Street.
. . . .
Q: So that the record is clear, you have given me your driver's license, which would expire on 1–31–92?
A: You asked for 1992.
Q: And that had an address, so that we are clear here, that had an address of 7236 Marsden Street, Philadelphia, Pennsylvania, 19135?
A: Yes.
. . . .
THE COURT: The first driver's license that you had had the Marsden Street address on there?
MR. COOPER: Yes.
. . . .
MR. FINEMAN: [T]hen we have another license, Your Honor, which is date expires 1–31–96, which again has the Marsden Street address also.
MR. COOPER: Which I amended and changed the address on that, Your Honor.
Notes of Testimony 3/25/94 at 57–59.

concerning where he stayed when he occasionally returned to Pennsylvania during this period of time was evasive. He certainly did not intend to return to Rhawn Street. Thus I am constrained to find that, under Section 704(f), when he left Rhawn Street and went to New Jersey he abandoned his Pennsylvania residence and domicile; his next Pennsylvania residence, Granite Street, is irrelevant because the one-year residence in New Jersey destroyed the four-year period he must be domiciled in Pennsylvania. Therefore, Cooper's affidavit is fatally defective and his nomination petition must be set aside.

Although Cooper's nomination petition must be set aside, the Court will also consider Petitioner's other objections because of the possibility of an appeal to the Supreme Court and the need for a swift judicial determination in election cases.

## II. *VALIDITY OF THE SIGNATURES*

We turn now to consideration of the validity of each of the challenged signatures submitted with Cooper's nomination petition.

As summarized previously, the Bureau of Election accepted a total of 842 signatures when Cooper's petition was filed and the nomination petition must contain 500 genuine signatures. Section 912.1(13) of the Code, 25 P.S. § 2872.1(13).

Petitioner challenged 566 of the signatures in various categories and in support of his attempt to strike these signatures, Petitioner presented the testimony of William Rubin and Mark Mekenvitz, Voter Registration Clerks for Philadelphia County and the testimony of handwriting expert William J. Ries. Cooper presented no witnesses *nor did he seek at any time to amend his nominating petition* in an attempt to cure any defective signature.

16. A listing of signatures which the Court has struck is compiled in the Appendix to this opinion. A full accounting including signatures determined to be valid is compiled, filed of record and has been distributed to the parties.

17. Besides the signature of a registered voter, the nomination petition requires the place of residence (house number, street or road, and city, borough or township), the occupation of the elector and the date of signing. Section 12 of the Code, 25 P.S. § 2868, states:

During the course of the hearings, Petitioner made numerous motions to amend the bases upon which many of these signatures were challenged. Where a signature was challenged in the first instance in the petition to set aside, amendments to add other bases of challenge were permitted. Where there had been no challenge to the signature at all, and Cooper had no advance notice that a signature had been objected to, Petitioner's motion to amend was denied. *Lefkowitz.*[16]

█ At the very least, nomination petitions must contain the prescribed number of genuine signatures. This requirement prevents fraud and preserves the integrity of the election process. *Cianfrani.* Thus it must first be established what defects in the signature or information spaces on a nomination petition are so material as to require that the signature be struck.[17] The grounds for challenge described by Petitioner can be divided into three main categories, and will be discussed serially below.

### A. *Defects Which Cannot be Amended*

█ The following types of defects alleged by Petitioner are fatal to the validity of a signature under the requirements of the Code, are not curable, and accordingly they must be struck:

1. *The elector is not registered to vote.* In this category thirty-six (36) signatures are stricken.[18]

2. *The elector is not registered in the proper party* (in this case, Democrat). Twenty-seven (27) signatures of electors registered as Republicans are stricken, and one (1) signature of an elector registered as Independent is stricken.

> Each signer of a nomination petition shall ... declare therein that he is a qualified elector of ... the political district therein named.... He shall add his occupation and residence, giving city, borough or township, with street and number, if any, and shall also add the date of signing, expressed in words or numbers.

18. See Appendix for specific strikes.

3. *The elector does not reside in the legislative district.* Nine (9) electors on the nomination petition live outside the Second Senatorial District, and their signatures are stricken.

4. *The elector signed the petition more than once.* No signature was stricken on this basis.

5. *The elector signed another nomination petition;* no signature was stricken on this basis.

6. *The signature or address is so illegible that it can not be identified.* After reviewing the election binders and examining the "street list,"[19] all of the signatures challenged on this basis were identified and, therefore, none were stricken. *In Re: Nomination of Stout,* 85 Dauph. 86 (1966).

■ 7. *The signature is fraudulent, i.e.,* the signature was signed by someone other than the elector. After hearing the testimony of Petitioner's handwriting expert, Mr. Ries, and after I, myself, carefully compared the signatures on the nomination petition with the elector's signature on the voter's registration affidavit, 53 signatures are stricken because in my opinion they are not the genuine signature of the registered elector and were placed on the nomination petition by persons other than the registered electors whose signatures they purported to be. Accordingly, this Court has no discretion to allow amendment to these signatures. *Petition of Minotti,* 132 Pa.Commonwealth Ct. 623, 574 A.2d 119 (1990). Serious doubts regarding the genuineness of signatures challenged as fraudulent were resolved in favor of Cooper since the Court was not absolutely convinced that these signatures were not genuine. *See Petition of Thompson,* 102 Pa.Commonwealth Ct. 110, 516 A.2d 1278 (1984).

■ Also, Petitioner challenged certain signatures on this basis in his petition to set aside, but did not present any evidence at the hearing. Where no evidence is presented to dispute the authenticity of a signature, it will be presumed genuine. *Nomination Petition of Freeman,* 115 Pa.Commonwealth Ct. 300, 540 A.2d 606 (1988).

**B. Defects Which are Amendable**

Certain other types of defects will also require a signature to be stricken from the nomination petition. However, these defects, apparent on the face of the petition, may be cured by amendment. *Minotti.* Cooper, however, at no time during the hearing moved to allow an amendment to cure the defects of signatures challenged in these categories. Consequently, the signatures will be stricken.

■ 1. *Signature is printed.* Five (5) signatures are stricken because the elector printed his/her name instead of signing it in the cursive manner as signed on the voter registration affidavit.

■ 2. *Omitted information.* Certain signatures were challenged because the informational blocks (address, occupation) were not filled in. In this category, six (6) signatures are stricken because the elector failed to enter *any* information concerning his/her occupation and no motion to amend was made by Cooper. *Stout.*[20] Where the elector pled *some* information in the box, such as "retired," "unemployed," or *some* mark indicating an abbreviation for either, the signature will not be stricken.

Also challenged were signatures that were not dated properly as the year was omitted or outside circulation period. Eighty-six (86) signatures were struck for this reason.

---

19. During the hearing, identification of these signatures was attempted by comparison to the unofficial street list of the Philadelphia County Bureau of Election.

20. After diligent research, no purpose has been unearthed for the requirement that an elector provide an occupation on the nomination petition. Modern voter registration affidavits do not even include a space for an elector's occupation, thus the requirement is questionable as a reliable way to confirm the identity of a petition signature. A person's occupation was required to be given on the old affidavits, but certainly it would be unreasonable to use an elector's present occupation with his/her former occupation stated on the affidavit as a meaningful means of identification.

3. *Nicknames.* Some electors used nicknames when they signed the nomination petition, *i.e.,* Mike for Michael, Fred for Alfred, or Terry for Terrance or Theresa. Absent evidence confirming the identity of these electors, these signatures must be stricken.[21] *In Re: Nomination Petition of Jansen,* 85 Dauph. 100 (1966). Thirty-eight (38) signatures are struck because the electors used nicknames not used on their voter registration affidavits.

### C. Signatures Which Need Not Be Struck Because Defect is Insubstantial

The last categories of challenges involve defects which are immaterial or unsubstantial. Such *de minimis* defects are technical in nature, and do not call into question the genuineness of the signature. *Freeman; Thompson.* Accordingly, we are not required to strike them.

1. *Where the address or occupation on nomination petition is different from the occupation listed on the voter registration affidavit.* Employment is not a prerequisite for voting privileges. Moreover, there is no provision in the Code requiring an elector to update her voter registration because of a change in job or retirement. The newer voter registration affidavits do not even have a space for an elector to disclose their occupation. Clearly, absent an allegation that the signature is fraudulent, no signature should be struck from a nomination petition because his/her occupation stated on a nomination petition is different than that which was stated on the voter registration affidavit.

As concerns an elector's address on the petition, absent an allegation that the elector does not live at the address noted on the petition, a signature will not be stricken because the mailing address is not identical to that found on the voter's registration affidavit, *Wolfe v. Switaj,* 106 Pa.Commonwealth Ct. 1, 525 A.2d 825 (1985) (unless, of course, it is not in the legislative district).

2. *Where the address, occupation and/or date are not written by the elector who has signed the petition.* Although Petitioner made numerous challenges on this basis, no authority apparently exists which would require signatures to be stricken simply because an elector signed his/her own name, but someone else filled in the additional information on the line, especially when all of the information is correct. Because of the general policy encouraging voters to select the candidate of their choice, unless the signature itself is fraudulent, a signature will not be struck because someone else filled in the other information on the line, (it could even be typed). *McLaughlin Nomination Petition,* 26 Pa.Commonwealth Ct. 16, 362 A.2d 469 (1976).

3. *Where the signature of the elector does not perfectly match the signature of the elector on the voter registration affidavit because the elector did not use a middle initial.* This defect is another situation where the elector's signature admittedly contains a defect, but such defect is so insignificant as to not be a material error. Accordingly we are not required to strike signatures where Petitioner simply alleged that the elector failed to use a middle initial, a marital prefix, or a parental or child suffix on the nomination petition. *Elliot Nomination Petition,* 26 Pa.Commonwealth Ct. 20, 362 A.2d 438, *affirmed per curiam,* 466 Pa. 463, 353 A.2d 446 (1976). Without an allegation of fraud, or other basis to cast serious doubt as to the genuineness of the signature, no signatures were stricken on this basis. *Wolfe.* We believe it would be totally unreasonable to require an elector to remember whether he or she used a middle initial when the voter's affidavit was completed, in some instances, twenty or thirty years earlier.

As discussed previously, a different situation is presented where the elector uses a nickname on the nomination petition instead of his or her proper name used when signing the voter registration affidavit. Although certain cases may be obvious (such as using Mike for Michael), but others are not (for

---

21. This is different than the situation presented by an elector who fails to use a middle initial, a

Jr. etc. These cases will be discussed below.

example Terry can be a nickname for Terrence or Theresa, Fred can be Alfred or Frederick). In order to be fair and to draw a clear line, without amendment, such a defect requires the signature to be stricken. Thirty-eight signatures (38) were stricken for this reason.

Also, thirty-eight (38) signatures which used simply the first letter of the first name or abbreviated the first name were stricken as improper deviations from the electors' signature on the voter registration affidavit.

### C. *Specific Line Challenges*

Three of Petitioner's line challenges present unique circumstances which require specific discussion.

 1. *Page 9, lines 31 and 32.* Line 31 is signed by "N. Prosperi," at 3146 Rawle St. and the occupation is listed as "housewife." Line 32 is signed by "N. Prosperi." Both signatures are followed by a mark which could be considered a "Jr." After examining the voter registration binders, the Court determined that the only female resident of 3146 Rawle St. is registered as Linda Marie Prosperi. The other two occupants are Nerio Prosperi and Nerio J. Prosperi, Jr., a registered Republican. Upon examination of the handwriting, it is obvious that both signatures are in the same hand, therefore one is invalid on that basis alone. Signature 9–32 can be stricken either because it was signed by 9–31, or because there is substantial evidence that the signer is a registered Republican. Signature 9–31 is struck as an invalid signature.

 2. *Page 6, Line 8.* A more interesting problem was raised by the signature "Billy English." After examining the appropriate voter registration affidavit, it was determined that this elector *registered* as "Billy," but *signed* his name on the affidavit as "William." Moreover, Mr. Ries testified that the handwriting of "Billy English" on the nomination petition matched the handwriting of "William English" on the voter registration affidavit. Accordingly, in a case such as

this, the signature was not stricken, for this reason, on the basis of the testimony of Mr. Ries.[22]

### D. *Summation*

In conclusion, after carefully considering the evidence, we hold that Petitioner did not sustain his burden of proof in challenging Cooper's nomination petition on the grounds that it did not include 500 signatures as required by the Code. To summarize the tally:

| | |
|---|---:|
| Total signatures on petition | 842 |
| Less total signatures struck | 299 |
| Remaining valid signatures | 543 |

### III. *VALIDITY OF THE NOTARIZATIONS*

 Petitioner argues that the affidavits notarized by Donna Wagner, Cooper's niece, are null and void because she has a direct interest in the outcome of the campaign, citing *Citizens Committee to Recall Rizzo v. Board of Elections of the City and County of Philadelphia,* 470 Pa. 1, 367 A.2d 232 (1976).

Section 19(e) of the Notary Public Law provides that "[n]o notary public may act as such in any transaction in which he is a party directly or pecuniarily interested." Section 19(e) of the Notary Public Law of 1953, Act of August 21, 1953, P.L. 1323, *as amended,* 57 P.S. § 165(e). In *Rizzo* the Supreme Court held that the degree of interest which would bar a person from acting as a notary is a question of fact. *Rizzo.* In that case the notaries, as paid employees of the Recall Committee, the Recall Committee's attorney, and several of the petition circulators were found to be "dedicated to the success of [the] petition" and were "actively involved in the yeoman effort to promote the recall." 470 Pa. at 23; 367 A.2d at 243.

Donna Wagner's involvement falls far below this threshold of involvement in Cooper's campaign. There was no testimony that she was paid by her uncle or his election committee or anyone else, or that she herself circulated any of the petitions. Instead she testi-

---

**22.** This signature was subsequently stricken, however, because Mr. English failed to complete the date. *See* Appendix.

fied that she would occasionally drop in at the campaign office since it was close to where she worked, and she notarized several of the nomination petitions there, after receiving proof of identification from the circulators. Notes of Testimony 3/25/94 at 147–49 and 155–156. She also testified candidly that she wanted her uncle to win the election; but this alone, without more, is not sufficient reason to call into question the integrity of the notarization of the nominating petitions.

AND NOW, April 18, 1994, Petitioner's Petition to Set Aside the Nomination Petition of Charles Cooper in the above-captioned matter as a Democratic candidate for the State Senate from the Second Senatorial district is hereby granted, and the said Nominating Petition of Charles Cooper be, and the same is hereby, set aside. The Prothonotary is directed to notify the parties and their counsel of this order and also certify a copy thereof to the Secretary of the Commonwealth of Pennsylvania, forthwith.

Costs are assessed on Petitioner.

### *APPENDIX*

I. DESCRIPTION OF OBJECTION CODES

DA *Different Address:* The signature is that of a registered elector, but the only registration affidavit would can be associated with the signature is different from the address shown on the nomination petition.

DUP *Duplicate*

ILL *Illegible Name:* The signature can not be read in order to associate it with any registered elector, and is therefore averred to be not the signature of a registered Democratic elector.

IND *Registered Independent*

IS *Invalid Signature:* The signature on the nomination petition differs from the signature from the signature on the associated registration affidavit.

NA *No address.* The space for an address is not filled in on the nominating petition.

NOC *No Occupation.* The space for an occupation is not filled in on the nominating petition.

NR *Not Registered.* No registration affidavit could be located for the signature on the nominating petition.

NSA *No Such Address.* Address affixed to the nominating petition does not exist.

OD *Out of District.* Address affixed to the nominating petition is located outside the Second Senatorial District.

R *Republican*

SBA *Signed By Another* The signature appearing on the nominating petition is not the bona fide signature of the registered elector, but was signed by someone other than that elector. This category was amended to include signatures where the signature was the bona fide signature of the registered elector, but other information on the line was signed by another person. Where the signature was already contested in this or another category, an objection amendment on this basis was permitted during the hearings.

WD *Wrong Date.* The date affixed to this signature is outside the legal period for circulation, February 8, 1994 through March 1, 1994.

### II. CONTESTED SIGNATURES

| Page & Line | Original Objections | Challenge Amended | Final Ruling | Comment |
|---|---|---|---|---|
| 1–1 | R | | Invalid | |
| 1–12 | ILL | IS | Invalid | Identity of voter determined; Court examined documents; Struck because Mrs. Vera Veitz is not substantially similar to Elvera Veitz |

| Page & Line | Original Objections | Challenge Amended | Final Ruling | Comment |
|---|---|---|---|---|
| 1–14 | IS | | Invalid | H. Gordon is not substantially similar to Harry J. Gordon, Jr. |
| 1–20 | NOC, NSA | | Invalid | Voter identified; Court examined documents; struck because no occupation entered |
| 1–21 | NOC | | Invalid | No occupation entered |
| 1–23 | NOC, NR | DA | Invalid | Voter identified; Court examined documents; struck because no occupation entered |
| 1–24 | IS, NOC | | Invalid | P.A. Amato is not substantially similar to Pasquale A. Amato; struck because no occupation entered |
| 1–25 | IS, NOC | R | Invalid | Registered Republican |
| 1–28 | NOC, OD | | Invalid | Address is outside the district |
| 1–29 | NOC, IS | | Invalid | S. Jakubiak is not substantially similar to Stanley Jakubiak |
| 1–32 | NR | | Invalid | |
| 1–38 | SBA | IS | Invalid | Katerine Peter Schiwall is not substantially similar to Katherine Schiwall |
| 1–45 | NR | | Invalid | |
| 1–49 | SBA | | Invalid | Signature not signed by voter; Court examined documents |
| 2–1 | SBA | WD | Invalid | Dated 2/19/93 |
| 2–2 | SBA | NR, IS | Invalid | Struck because signature not signed by voter; Colleen M. McGrath is not substantially similar to Colleen L. McGrath |
| 2–8 | SBA, R | | Invalid | Registered Republican |
| 2–10 | NR | | Invalid | |
| 2–11 | R, IS | | Invalid | Registered Republican |
| 2–16 | SBA, IS | | Invalid | Signature was not signed by voter; Court examined documents |
| 2–19 | SBA | | Invalid | Name of voter is printed |
| 2–20 | WD, NR, NSA | | Invalid | No registered voter located |
| 2–21 | WD, NR, NSA | | Invalid | Struck because no registered voter located; no year specified |

| Page & Line | Original Objections | Challenge Amended | Final Ruling | Comment |
|---|---|---|---|---|
| 2–22 | SBA, IND | | Invalid | Registered Independent; no year specified |
| 2–24 | SBA, IS | | Invalid | Signature was not signed by voter; Court examined documents |
| 2–27 | R | | Invalid | |
| 2–28 | R | | Invalid | |
| 2–31 | OD | | Invalid | |
| 3–2 | IS | | Invalid | Debi Camburn is not substantially similar to Debra A. Camburn; Nickname |
| 3–6 | IS | | Invalid | D. Callahan is not substantially similar to Dolores A. Callahan |
| 3–8 | NR | | Invalid | No registered voter located; Court examined documents |
| 3–12 | IS, R | | Invalid | Voter registered Democrat; Struck because H. McDevitt is not substantially similar to Harry J. McDevitt |
| 3–13 | IS | | Invalid | Mike Stevens is not substantial similar to Michael Stevens |
| 3–14 | IS | SBA | Invalid | Signature not signed in voters own hand; Court examined documents |
| 3–15 | SBA | | Invalid | |
| 3–18 | ILL | IS | Invalid | Registered voter identified; signature struck because Mike Kuzma is not substantially similar to Michael Kuzma; Court examined documents |
| 3–19 | SBA | | Invalid | |
| 3–20 | SBA | | Invalid | |
| 3–22 | IS | | Invalid | Tom Payne is not substantially similar to Thomas W. Payne, Jr.; Nickname |
| 3–31 | SBA | | Invalid | Signature not signed by voter |
| 3–32 | SBA, IS | | Invalid | Signature not signed by voter |
| 3–33 | SBA | | Invalid | Signature not signed by voter |
| 3–34 | NR, SBA | | Invalid | No registered voter located; Court examined documents |
| 3–38 | R | | Invalid | |
| 3–39 | R | | Invalid | |

| Page & Line | Original Objections | Challenge Amended | Final Ruling | Comment |
|---|---|---|---|---|
| 3–41 | NR | | Invalid | |
| 3–47 | NR | R | Invalid | No registered at the time petition was signed; Registered Republican 2/24/94; Court examined documents |
| 4–5 | R | | Invalid | |
| 4–9 | IS | | Invalid | D. Monaghan is not substantially similar to Daniel V. Monaghan |
| 4–15 | NR | | Invalid | |
| 4–39 | NR | | Invalid | |
| 4–40 | SBA | IS | Invalid | Kathy Kraemer is not substantially similar to Kathleen Kraemer |
| 4–47 | IS, SBA | | Invalid | Signature of voter signed by another hand; Court examined documents |
| 4–50 | SBA | | Invalid | Signature of voter signed by another hand; Court examined documents |
| 5–8 | NR, SBA | | Invalid | Struck because signature of voter signed by another hand; registered Democrat identified |
| 5–9 | IS | NR | Invalid | No registered voter; stipulation by parties |
| 5–14 | R, NOC, IS | | Invalid | Struck by Bureau [1] |
| 5–15 | INC, NOC, D | | Invalid | Struck by Bureau |
| 5–16 | NOC | | Invalid | Struck by Bureau |
| 5–17 | NOC | | Invalid | Struck by Bureau |
| 5–18 | NOC | | Invalid | Struck by Bureau |
| 5–19 | NOC | | Invalid | Struck by Bureau |
| 5–20 | NOC | | Invalid | Struck by Bureau |
| 5–21 | NOC | | Invalid | Struck by Bureau |
| 5–23 | IS, NR | | Invalid | Fred Perazelli is not substantially similar to Alfred J. Perazelli |
| 5–27 | IS | | Invalid | Wm McTigue is not substantially similar to William R. McTigue |
| 5–46 | IS | | Invalid | Nickname |
| 6–1 | WD | IS | Invalid | No year specified |
| 6–2 | WD | IS, SBA | Invalid | Struck because printed name; no year specified |
| 6–3 | WD, NR | | Invalid | Struck because no registered voter identified; Court examined documents; no year specified |

1. Signatures struck by the Bureau are not counted in the total number of signatures in the nomination petition, nor are they counted in this Court's strike total.

| Page & Line | Original Objections | Challenge Amended | Final Ruling | Comment |
|---|---|---|---|---|
| 6–4 | WD | | Invalid | No year specified |
| 6–5 | WD, IS | | Invalid | No year specified |
| 6–6 | WD, ILL | | Invalid | No year specified |
| 6–7 | WD, NOC, ILL | SBA | Invalid | No year specified |
| 6–8 | WD, ILL | SBA, IS | Invalid | No year specified |
| 6–9 | WD, NOC | | Invalid | No year specified |
| 6–10 | WD, IS | | Invalid | No year specified |
| 6–11 | WD, IS | | Invalid | No year specified |
| 6–12 | WD, R | | Invalid | Struck because registered Republican; no year specified |
| 6–13 | WD | | Invalid | No year specified |
| 6–14 | WD | | Invalid | No year specified |
| 6–15 | WD | | Invalid | No year specified |
| 6–16 | WD, NR | | Invalid | No year specified |
| 6–17 | WD, NR | | Invalid | Struck because no registered voter identified; Court examined documents; no year specified |
| 6–18 | WD, NR | | Invalid | No year specified |
| 6–19 | WD, NR | | Invalid | No year specified |
| 6–20 | WD, IS | | Invalid | No year specified |
| 6–21 | WD, IS | | Invalid | No year specified |
| 6–22 | WD, IS | | Invalid | No year specified |
| 6–23 | WD | | Invalid | No year specified |
| 6–24 | WD | | Invalid | No year specified |
| 6–25 | WD | | Invalid | No year specified |
| 6–26 | WD, IS | | Invalid | No year specified |
| 6–27 | WD, IS | | Invalid | No year specified |
| 6–28 | WD, IS | | Invalid | No year specified |
| 6–29 | WD | | Invalid | No year specified |
| 6–31 | SBA | R | Invalid | Registered Republican |
| 6–32 | SBA | R | Invalid | Registered Republican |
| 6–40 | ILL, NR | | Invalid | No registered voter identified |
| 6–41 | NR | | Invalid | |
| 6–42 | IS | | Invalid | Wm. C. Zitter is not substantially similar to William C. Zitter |
| 6–43 | NSA | OD | Invalid | Address located out of the district identified |
| 7–2 | WD, IS | | Invalid | Struck because no year specified; nickname |
| 7–3 | WD, IS | | Invalid | No year specified; signature is substantially similar |
| 7–4 | WD | SBA | Invalid | Struck because signature was not signed by the voter; no year specified; Court examined documents |
| 7–5 | WD | | Invalid | No year specified |
| 7–6 | WD | | Invalid | No year specified |
| 7–7 | WD | | Invalid | No year specified |
| 7–8 | WD, NR | | Invalid | Struck because no registered voter identified; no year specified |

| Page & Line | Original Objections | Challenge Amended | Final Ruling | Comment |
|---|---|---|---|---|
| 7–9 | WD, IS, NA | | Invalid | No year specified; signature is substantially similar |
| 7–10 | WD, IS, NA | | Invalid | Struck because name is printed; no year specified |
| 7–11 | WD, NA | | Invalid | No year specified |
| 7–12 | WD, R, NA | | Invalid | Registered Republican |
| 7–13 | WD, IN | | Invalid | Registered Democrat; Struck because no year specified |
| 7–14 | WD, NA | | Invalid | No year specified |
| 7–15 | WD | | Invalid | No year specified |
| 7–16 | IS, WD, NA | | Invalid | Struck because no year specified; signature is substantially similar |
| 7–17 | IS, WD, NA | | Invalid | Struck because no year specified; signature is substantially similar |
| 7–18 | WD, NA | | Invalid | No year specified |
| 7–20 | WD, IS | | Invalid | No year specified |
| 7–21 | WD, IS, R | | Invalid | Registered Republican Court examined documents; no year specified |
| 7–22 | WD, IS, NA | | Invalid | Struck because no year specified; signature is not substantially similar |
| 7–23 | WD, IS, NA | | Invalid | Struck because no year specified; nickname |
| 7–24 | WD, NA | | Invalid | No year specified |
| 7–25 | WD | | Invalid | No year specified |
| 7–26 | WD, NOC | | Invalid | Struck by Bureau |
| 7–27 | WD, NOC | | Invalid | Struck by Bureau |
| 7–28 | WD, NOC | | Invalid | Struck by Bureau |
| 7–29 | WD, IS, NOC | | Invalid | Struck by Bureau |
| 7–30 | WD | | Invalid | No year specified |
| 7–31 | WD | | Invalid | No year specified |
| 7–32 | WD, IS | | Invalid | No year specified; signature is substantially similar |
| 7–33 | WD, SBA | NR | Invalid | Struck because no year specified; Betsy Chiarizio is not substantially similar to Bessie G. Chiarizio |
| 7–34 | WD | | Invalid | No year specified |
| 7–35 | WD | | Invalid | No year specified |
| 7–36 | WD, IS | | Invalid | No year specified |
| 7–37 | WD, IS, SBA | | Invalid | Signature was signed by another hand; no year specified; Court examined documents |
| 7–38 | WD, IS | | Invalid | No year specified; nickname |
| 7–39 | WD, IS | | Invalid | No year specified |
| 7–40 | WD | | Invalid | No year specified |
| 7–41 | WD | | Invalid | No year specified |

| Page & Line | Original Objections | Challenge Amended | Final Ruling | Comment |
|---|---|---|---|---|
| 7–42 | WD, IS | | Invalid | No year specified |
| 7–43 | WD | | Invalid | No year specified |
| 7–44 | WD | | Invalid | No year specified |
| 7–45 | WD | IS | Invalid | No year specified |
| 8–1 | WD, IS | | Invalid | No year specified |
| 8–2 | WD | SBA | Invalid | Struck because signature signed by another hand; no year specified; Court examined documents |
| 8–3 | WD, IS | | Invalid | No year specified |
| 8–4 | WD, IS | SBA | Invalid | Struck because signature signed by another hand; no year specified |
| 8–5 | WD, IS | SBA | Invalid | Struck because signature signed by another hand; no year specified |
| 8–6 | WD, IS | | Invalid | No year specified |
| 8–8 | IS | | Invalid | L. Illingworth is not substantially similar to Leslie Illingworth |
| 8–9 | IS | | Invalid | |
| 8–10 | IS | | Invalid | |
| 8–11 | IS | | Invalid | |
| 8–14 | IS | SBA | Invalid | Signature signed by another hand |
| 8–19 | WD, IS | | Invalid | No year specified; |
| 8–20 | IS | | Invalid | Nickname |
| 8–24 | IS | | Invalid | Nickname |
| 8–26 | IS | | Invalid | |
| 8–30 | WD, IS | | Invalid | No year specified |
| 8–31 | IS | | Invalid | |
| 8–37 | IS | | Invalid | Nickname |
| 8–39 | IS | WD | Invalid | Signature dated 2/19/92 |
| 8–40 | IS | WD | Invalid | Signature dated 2/19/92 |
| 8–42 | IS | SBA | Invalid | Signature not signed by voter; Court examined documents |
| 8–45 | IS | SBA | Invalid | Signature not signed by voter; Court examined documents |
| 9–1 | NR, WD | | Invalid | Struck because not Registered; dated 2/15/93 |
| 9–8 | NR | | Invalid | |
| 9–13 | IS | | Invalid | Nickname |
| 9–14 | IS, R | | Invalid | Registered Republican |
| 9–22 | IS | | Invalid | |
| 9–29 | IS | | Invalid | Nickname |
| 9–30 | OD | | Invalid | |
| 9–31 | IS, R | | Invalid | Struck for invalid signature; see discussion |
| 9–32 | IS | R | Invalid | Struck for invalid signature; see discussion |
| 9–34 | SBA | | Invalid | |
| 9–37 | OD | | Invalid | |
| 9–49 | IS | | Invalid | Nickname |

| Page & Line | Original Objections | Challenge Amended | Final Ruling | Comment |
|---|---|---|---|---|
| 10–18 | NR | | Invalid | No registered voter identified |
| 10–24 | IS | NR | Invalid | No registered voter; stipulation by parties |
| 10–27 | IS | | Invalid | Nickname |
| 10–47 | IS | | Invalid | See discussion |
| 11–4 | SBA, IS | | Invalid | Signature not signed by voter; Court examined documents |
| 11–10 | IS | | Invalid | Nickname |
| 11–16 | SBA | | Invalid | Court examined documents |
| 11–22 | SBA, IS | | Invalid | Signature not signed by voter; Court examined documents |
| 11–24 | SBA, IS | | Invalid | Signature not signed by voter; Court examined documents |
| 11–25 | IS | | Invalid | |
| 11–26 | IS | SBA | Invalid | Signature not signed by voter; Court examined documents |
| 11–28 | SBA, IS | | Invalid | Nickname |
| 11–29 | SBA | | Invalid | Court examined documents |
| 11–30 | SBA, IS | | Invalid | Signature not signed by voter; Court examined documents |
| 11–31 | SBA | | Invalid | Court examined documents |
| 11–33 | SBA, IS | | Invalid | Signature not signed by voter; Court examined documents |
| 11–34 | SBA | | Invalid | Court examined documents |
| 11–35 | SBA, IS | | Invalid | Signature not signed by voter; Court examined documents |
| 11–41 | IS | | Invalid | Nickname |
| 11–43 | IS | SBA | Invalid | Signature not signed by voter; original signature overwritten; Court examined documents |
| 12–8 | IS | | Invalid | |
| 12–21 | IS | | Invalid | Nickname |
| 12–25 | R | | Invalid | |
| 12–27 | IS | | Invalid | Nickname |
| 12–29 | NR | | Invalid | No registered voter identified; Court examined documents |
| 12–30 | NR | | Invalid | No registered voter identified; Court examined documents |

| Page & Line | Original Objections | Challenge Amended | Final Ruling | Comment |
|---|---|---|---|---|
| 12–31 | NR | | Invalid | No registered voter identified; Court examined documents |
| 12–32 | IS | | Invalid | Nickname |
| 13–5 | NR | | Invalid | No registered voter identified |
| 13–10 | NR | | Invalid | No registered voter identified; Court examined documents |
| 13–12 | IS | | Invalid | |
| 13–20 | IS | WD | Invalid | Signature dated 2/2/84; nickname |
| 13–22 | IS | | Invalid | Nickname |
| 13–23 | IS | SBA | Invalid | Signature not signed by voter; Court examined documents |
| 13–26 | ILL | NR | Invalid | No registered voter identified; signature illegible; Court examined documents |
| 13–28 | IS | | Invalid | Nickname |
| 13–29 | IS | | Invalid | |
| 13–30 | IS | | Invalid | Nickname |
| 13–31 | IS | | Invalid | Nickname |
| 13–39 | IS | | Invalid | Nickname |
| 13–43 | IS | | Invalid | |
| 14–5 | IS | R | Invalid | Registered Republican |
| 14–15 | R | | Invalid | |
| 14–16 | NR | | Invalid | |
| 14–19 | IS | | Invalid | Nickname |
| 14–20 | R | | Invalid | |
| 14–21 | NR | | Invalid | |
| 15–5 | IS | | Invalid | |
| 15–9 | R | | Invalid | |
| 15–11 | IS | | Invalid | Nickname |
| 16–1 | IS | SBA | Invalid | Signature not signed by voter; Court examined documents |
| 16–2 | IS | SBA | Invalid | Signature not signed by voter; Court examined documents |
| 16–3 | OD | WD | Invalid | Address out of the district; signature dated 2/20/84 |
| 16–4 | NOC | | Invalid | |
| 16–6 | NR | | Invalid | |
| 16–7 | OD | | Invalid | |
| 16–9 | OD | | Invalid | |
| 16–10 | OD | | Invalid | |
| 17–7 | IS | | Invalid | Nickname |
| 17–12 | SBA, IS | | Invalid | Signature not signed by voter; Court examined documents |
| 18–6 | IS | | Invalid | Nickname |
| 18–17 | IS | SBA | Invalid | Signature not signed by voter; Court examined documents |
| 18–20 | IS | | Invalid | Nickname |
| 18–30 | IS | | Invalid | Thos. Romano is not substantially similar to Thomas G. Romano |

| Page & Line | Original Objections | Challenge Amended | Final Ruling | Comment |
|---|---|---|---|---|
| 18–32 | IS | | Invalid | Wm. Supera is not substantially similar to William Supera |
| 19–1 | WD, IS | | Invalid | No year specified |
| 19–2 | WD, NOC | | Invalid | Struck because no occupation entered; no year specified |
| 19–4 | WD, IS | | Invalid | No year specified |
| 19–6 | WD | | Invalid | No year specified |
| 19–7 | WD | | Invalid | No year specified |
| 19–8 | WD | | Invalid | No year specified |
| 19–9 | WD, IS | | Invalid | No year specified |
| 19–10 | WD, ILL | | Invalid | Registered voter identified; Court examined documents; no year specified |
| 20–1 | SBA, IS | | Invalid | Printed name |
| 20–2 | SBA, IS | | Invalid | Printed name |
| 20–3 | SBA, IS | R | Invalid | Registered Republican; printed name |
| 20–6 | SBA | | Invalid | Signature not signed by voter; Court examined documents |
| 20–12 | IS | | Invalid | |
| 20–14 | NA, IS | | Invalid | Signature is not substantially similar |
| 20–15 | SBA, IS | | Invalid | K. Brozis is not substantially similar to Kazimir Brozis |
| 20–16 | SBA, IS | | Invalid | Signature not signed by voter; Court examined documents |
| 20–17 | SBA, IS | | Invalid | Signature not signed by voter; Court examined documents |
| 20–19 | IS | | Invalid | Ann M. Quigley is not substantially similar to Annmarie Quigley |
| 21–3 | IS | | Invalid | |
| 21–4 | NR | | Invalid | |
| 21–5 | IS | | Invalid | Mgt Gibson is not substantially similar to Margaret P. Gibson |
| 21–7 | NR | | Invalid | |
| 21–10 | IS | | Invalid | |
| 21–11 | NR | | Invalid | |
| 21–12 | ILL | NR | Invalid | No registered voter identified; signature illegible; Court examined documents |
| 22–2 | SBA | WD | Invalid | Struck because signature not signed by voter; signature dated 2/20/93 |

| Page & Line | Original Objections | Challenge Amended | Final Ruling | Comment |
|---|---|---|---|---|
| 22–3 | IS | WD | Invalid | Signature dated 2/10/93 |
| 22–4 | R | WD | Invalid | Registered Republican; signature dated 2/20/93 |
| 22–5 | R, IS, WD | | Invalid | Registered Republican; no year specified |
| 22–6 | WD | | Invalid | No year specified |
| 22–10 | R | | Invalid | |
| 22–12 | SBA | | Invalid | Signature not signed by voter; Court examined documents |
| 22–13 | SBA | | Invalid | Signature not signed by voter; Court examined documents |
| 22–14 | IS | | Invalid | |
| 22–15 | IS, SBA | | Invalid | Signature not substantially similar |
| 22–20 | IS | SBA | Invalid | Signature not signed by voter; Court examined documents; nickname |
| 22–22 | SBA | | Invalid | Court examined documents |
| 23–1 | IS, WD | | Invalid | No year specified |
| 23–3 | IS, WD | | Invalid | No year specified; nickname |
| 23–4 | IS, WD | | Invalid | No year specified |
| 23–5 | WD | | Invalid | No year specified |
| 23–6 | WD | | Invalid | No year specified |
| 23–7 | WD | | Invalid | No year specified |
| 23–8 | WD | | Invalid | No year specified |
| 23–9 | WD | | Invalid | No year specified |
| 23–10 | WD | | Invalid | No year specified |
| 23–11 | WD | | Invalid | No year specified |
| 23–17 | NR | | Invalid | No registered voter identified; Court examined documents |
| 23–19 | IS | WD | Invalid | Peg McGrogan is not substantially similar to Margaret McGrogan |
| 23–22 | IS | | Invalid | |
| 23–31 | R, IS | | Invalid | Registered Republican |
| 24–1 | SBA, IS | | Invalid | Signature not signed by voter; Court examined documents |
| 24–2 | SBA | | Invalid | Signature not signed by voter; Court examined documents |
| 24–3 | NR | | Invalid | |
| 24–4 | SBA | | Invalid | Court examined documents |
| 24–5 | SBA | | Invalid | Court examined documents |
| 24–8 | IS | | Invalid | Nickname |
| 24–9 | IS | | Invalid | Nickname |
| 24–11 | NR | IS | Invalid | No registered voter identified |

| Page & Line | Original Objections | Challenge Amended | Final Ruling | Comment |
|---|---|---|---|---|
| 24–14 | ILL | NR, IS, SBA | Invalid | Registered voter identified; signature not substantially similar; Court examined documents |
| 24–15 | IS | | Invalid | |
| 24–19 | IS | WD | Invalid | Struck because nickname; date determined to be 2/20/94 |
| 24–21 | ILL | R | Invalid | Republican voter identified |
| 24–32 | ILL | IS, SBA | Invalid | Signature not signed by voter identified; Court examined documents |
| 24–34 | ILL | IS | Invalid | Nickname |
| 24–38 | ILL | IS | Invalid | Nickname |

III. FINAL TALLY

| | |
|---|---|
| TOTAL SIGNATURES: | 842 |

INVALID:

| | |
|---|---|
| Registered Republican | 27 |
| Registered Independent | 1 |
| Invalid Signature—not complete | 38 |
| Invalid Signature—Nickname | 38 |
| Invalid Signature—Printed | 5 |
| No occupation entered | 6 |
| Reside out of district | 9 |
| Not registered | 36 |
| Signature not signed by voter | 53 |
| Date outside limit | 86 |
| Total strikes | 299 |
| TOTAL VALID SIGNATURES | 543 |

Giuseppe ERMOCEDIA, Petitioner,

v.

WORKMEN'S COMPENSATION AP-PEAL BOARD (PINCUS BROTHERS–MAXWELL), Respondent.

Commonwealth Court of Pennsylvania.

Submitted Feb. 18, 1994.

Decided June 2, 1994.

Reargument Denied July 22, 1994.

