## No. 16,548.

BAKER, SECRETARY OF STATE *v*. BOSWORTH ET AL.
(222 P. [2d] 416)

Decided September 14, 1950.   Rehearing denied September 19, 1950.

Mr. JOHN W. METZGER, Attorney General, Mr. ALLEN MOORE, Deputy, Mr. FRANK A. WACHOB, Assistant, for plaintiff in error.

Messrs. AMMONS & BROMLEY, Messrs. GRANT, SHAFROTH & TOLL, Mr. DOUGLAS McHENDRIE, Mr. RICHARD D. HALL, Mr. HUGH D. HENRY, for defendants in error.

Mr. ANTHONY F. ZARLENGO, Mr. F. E. DICKERSON, amici curiae.

*En Banc.*

MR. JUSTICE HAYS delivered the opinion of the court.

Two questions are here presented for determination. (1) Is section 6 (2a), chapter 86, 1945 Cum. Supp., '35 C.S.A., constitutional? In so far as pertinent, that sec-

tion provides: "No petition for any initiated law or amendment to the constitution shall be of any force or effect, nor shall said proposed law or amendment to the constitution be submitted to the people of the state of Colorado for adoption or rejection at the polls, as is by law provided for, unless the petition for the submission of such initiated law or amendment to the constitution be signed by at least fifteen per cent (15%) of the legal voters of the state of Colorado * * *." (2) Was the petition here considered circulated within the period specified by law?

With respect to the first question, section 1, article V, of the Constitution, provides, in so far as here material:

"The legislative power of the state shall be vested in the general assembly, * * * but the people reserve to themselves the power to propose laws and amendments to the constitution and to enact or reject the same at the polls independent of the general assembly * * *.

"The first power hereby reserved by the people is the initiative, and at least eight per cent of the legal voters shall be required to propose any measure by petition * * *."

"The whole number of votes cast for secretary of state at the regular general election last preceding the filing of any petition * * * shall be the basis on which the number of legal voters necessary to sign such petition shall be counted.

\* \* \*

"The secretary of state shall submit all measures initiated by * * * the people for adoption or rejection at the polls, in compliance herewith.

\* \* \*

"In submitting the same and in all matters pertaining to the forms of all petitions the secretary of state and all other officers shall be guided by the general laws, and the act submitting this amendment, until legislation shall be especially provided therefor.

\* \* \*

"This section of the constitution shall be in all respects self-executing."

In construing this constitutional provision it is well at the outset to keep in mind the purpose sought to be accomplished by the people in the adoption of the initiative and referendum amendment, as enunciated in *People ex rel. v. Prevost,* 55 Colo. 199, 134 Pac. 129, from which we quote:

■ "The people have the sovereign right to amend their constitution if they so desire, and courts have no power to amend it for them. The briefs point out that dangers may arise from the unlimited proposal of amendments to the constitution, and seem to express a fear of the abuse which the people may make of their power. We have no right to assume such a result, and such argument if heeded, would sweep away our present form of government. It is said in section 1 of article II of the Constitution 'That all political power is vested in and derived from the people; that all government, of right, originates from the people, is founded upon their will only, and is instituted solely for the good of the whole.'"

■■ Concerning the same section, we said in *Brownlow v. Wunsch,* 103 Colo. 120, 83 P. (2d) 775:

"This section was adopted by popular vote in the general election in 1910 and by it the people reserved to themselves the power to propose laws and amendments to the Constitution and to enact or reject the same at the polls independent of the general assembly. Although by express words it is declared that this section in all respects shall be self-executing, it is clearly contemplated by its terms that legislation may be enacted to further its operation. Pursuant thereto the legislature has adopted certain facilitating statutes which appear in '35 C.S.A. as chapter 86 thereof. It has generally been held by the courts of all jurisdictions that a constitutional provision for the initiative and referendum and statutes enacted in connection therewith should be liberally construed. * * *.

"We proceed to a determination of the controversy before us upon these considerations to the end that the constitutional right reserved to the people 'may be facilitated, and not hampered by either technical statutory provisions or technical construction thereof, further than is necessary to fairly guard against the fraud and mistake in the exercise by the people of this constitutional right.' "

With respect to similar constitutional provisions the supreme court of Oregon said in *Stevens v. Benson,* 50 Ore. 269, 91 Pac. 577: "A constitutional provision is said to be self-executing if it enacts a sufficient rule by means of which the right given may be enjoined and protected. The language used as well as the object to be accomplished, is to be looked into in accertaining the intention of the provision. * * * It is plainly expressed in the provision itself in this case that its reserved rights are to be independent of the legislature, and is sufficiently specific that it may be carried out without legislative aid. * * * It will also override and nullify whatever legislation, either prior or subsequent, would defeat or limit the right [citing cases]. And so the legislature may enact laws to facilitate the enforcement of constitutional provisions that are self-executing, and such laws will be obligatory upon the court when intended by the legislature to be mandatory, so long as they do not curtail the rights reserved or exceed the limitations specified therein."

■ It is quite uniformly held as stated in 16 C.J.S., page 99: "Only such legislation is permissible as is in furtherance of the purpose, or as will facilitate the enforcement, of such provision, and legislation which will impair, limit or destroy rights granted by the provision is not permissible. * * * A provision designed to remove an existing mischief should never be construed as dependent for its efficacy and operation on legislative will."

Plaintiff in error insists that because the Constitution

provides that at least eight per cent of the voters are authorized to initiate constitutional amendments, that therefore the legislature is authorized to increase that number to fifteen per cent or more within its discretion. This precise point was considered by the supreme court of North Dakota in *State ex rel. v. Hall*, 44 N.D. 459, 171 N.W. 213, and there determined adversely to the contention of plaintiff in error. The court held that the phrase *"at least,"* in reference to the number of signatures required to initiate constitutional amendments, is neither indefinite nor uncertain, and that when the constitutional minimum is reached, the petition contains all signatures necessary or required. It was there stated:

"The only requirement under subdivision 2 is that an 'initiative petition be filed containing signatures of at least twenty-five per cent of the legal voters in each of not less than one-half of the counties of the state.'

"It is plain to see that such petition could relate to any subject-matter, and if the Constitution is sought to be amended under the provisions of subdivision 2, the rule therein laid down as to the petition must be followed. We do not agree with the language in State ex rel. Linde v. Hall that the percentage is uncertain. The percentage is stated in no equivocal terms. The petition must contain not less than twenty-five per cent. When such petition does contain twenty-five per cent it is a proper and legal petition under the 16th Amendment. Nothing more is required, nothing less is legal. A petition might contain more than twenty-five per cent, but it must not contain less. Neither can the minimum per cent required be increased by the legislature. For instance, if the legislature should pass a law providing that where under subdivision 2, a constitutional amendment is submitted to remove the state university from Grand Forks to some other city of the state, such petition should contain at least fifty per cent of the legal voters in each of not less than one half of the counties of the state, it is easily seen that such provision would

increase the minimum of petitioners provided in the 16th Amendment by one hundred per cent. Under such a law passed by the legislature, the minimum would not be twenty-five per cent, but fifty per cent of the voters. If such a law were passed, it is plain that it would directly contravene the terms of the 16th Amendment which declares twenty-five per cent the minimum required. The legislature cannot, by any act, change the minimum of percentage of the voters required as fixed by subdivision 2 of the 16th Amendment. Whenever twenty-five per cent of the legal voters in each of not less than one half of the counties of the state sign a petition to amend the Constitution in regard to any subject-matter, they have complied with the constitutional requirement of the 16th Amendment which is a part of the Constitution, and are entitled to enjoy the benefits of such constitutional amendment according to its terms and provisions, and the legislature cannot defeat that right by increasing the minimum of the percentage of voters in contravention of the constitutional minimum provision of twenty-five per cent prescribed in the 16th Amendment. If the legislature should attempt to do so, its act, measured by the 16th Amendment, would be unconstitutional."

In addition to the foregoing it is well to observe, and to emphasize, that our Constitution in terms makes the initiative and referendum provisions thereof *in all respects self-executing;* provides that the rights therein reserved to the people to initiate and adopt constitutional amendments are *"independent of the general assembly,"* and makes it the mandatory duty of the secretary of state to submit all such measures to a vote of the qualified electors in compliance *"herewith."* (Meaning the Constitution.)

■ No legislation is necessary or required to put into force and effect the self-executing constitutional provisions authorizing initiative proceedings for the adoption of constitutional amendments, by eight per cent of

the electorate. If we should hold, as plaintiff in error contends, that the minimum of eight per cent of the voters, as specified in the Constitution, can be lawfully raised to fifteen, or even a higher, percentage, such holding would be contrary to, and in violation of, the above provision of the Constitution, that such reserved rights shall be exercised *"independent of the general assembly."* It is inconceivable that the people reserved such power in themselves, and at the same time, and in the same instrument, vested their agent, the general assembly, with authority to restrict, limit, impair, and even to nullify that power. It is obvious to us that if the legislature is vested with power to substitute fifteen per cent, as it attempted to do in the statute, for the eight per cent provided in the Constitution, it could, by the same token and with equal propriety, substitute fifty per cent or more, and thereby make it virtually impossible for the people to initiate any measure or to submit the same to the electorate at the polls. We cannot place our stamp of approval on such a scheme or device to return to the legislature a power which the people have taken from it and reserved to themselves.

The general assembly is authorized under the above constitutional provision to enact laws which will facilitate and promote the exercise by the people of the rights reserved, including legislation with respect to the form of petitions, and legislation to prevent fraud, but no such enactment may directly or indirectly limit, curtail, or restrict such rights.

Similar rulings under comparable constitutional provisions by courts of last resort in other states are numerous. No useful purpose could be served by quoting excerpts from such decisions. We cite a few of them and also a recognized text in support of the conclusions reached herein. Vol. I, Cooley's Constitutional Limitations (8th ed.), p. 171; *State ex rel. v. Smith*, 355 Mo. 27, 194 N.W. (2d) 302; *Barker v. St. Louis County*, 340 Mo. 986, 104 S.W. (2d) 371; *Kitchens v. City of Para-*

*gould,* 191 Ark. 940, 88 S.W. (2d) 843; *Varney v. Justice,* 86 Ky. 596, 6 S.W. 457; *Massenburg v. Board of Commissioners,* 96 Ga. 614, 23 S.E. 998; *Farris v. Goss* (Maine), 60 A. (2d) 908; *Arkansas Tax Com. v. Moore,* 103 Ark. 48, 145 S.W. 199; *Marsh v. Bartlett,* 343 Mo. 526, 121 S.W. (2d) 737; *Whitman v. Moore,* 59 Ariz. 211, 125 P. (2d) 445; *Leininger v. Secretary of State,* 316 Mich. 644, 26 N.W. (2d) 348.

█ It follows that the statute, in so far as it attempts to require more than eight per cent of the legal voters to sign petitions for the submission of initiated amendments to the Constitution, is unconstitutional and void.

█ The second question here involved is whether or not the petition signed by eight per cent of the qualified voters was circulated within the period specified by law.

The applicable provisions of the statute, section 6 (1), chapter 86, 1945 Cum. Supp. '35 C.S.A., read:

"The original draft of all initiative petitions * * * shall, before they are signed by the electors· of any of them, be submitted * * * to the secretary of state without any title thereto, submission clause, or ballot title * * *; within three days after such submission, the secretary of state shall call to his assistance the attorney general and the reporter of the supreme court, the three of whom, a majority controlling, shall, within five days thereafter, designate and fix a proper fair title * * * also its ballot title and submission clause * * *. If any person or persons presenting such initiative petition are not satisfied with the titles and submission clause thus provided * * * he or they may, within forty-eight hours after its return, file a motion with the secretary of state for a rehearing, * * *."

\* \* \*

"After the title for any such proposed law or constitutional amendment and its ballot title and submission clause shall be fixed and determined as hereinbefore provided, the secretary of state shall cause to be published once each week for two successive weeks in each

county of the state * * * a true copy of the title and text of such initiated * * * amendment * * * with the form in which the ballot title thereof will be printed in the official ballot, which publication shall be completed within thirty days from the date the titles and submission clause * * * shall have been fixed and determined as hereinbefore provided."

\* \* \*

"Any qualified elector who is not satisfied with the titles and submission clause thus provided, * * * may, within forty days after such titles and submission clause have been fixed and determined, file a motion with the secretary of state for a rehearing, * * *."

\* \* \*

"No petition for any initiated measures shall be circulated nor any signature thereto have any force or effect which has been signed before the titles and submission clauses have been fixed and determined in the manner herein provided."

The original draft of the initiated measure in question was submitted to, and filed with, the secretary of state prior to January 31, 1950, and before it was signed by any elector. On that date, by unanimous action of the three officials designated by statute, the attorney general, reporter of the supreme court, and secretary of state, a title, and ballot title and submission clause, were designated and fixed as by law provided.

No appeal by the sponsors or anyone else from the fixing of such titles and submission clause was taken; the time for such appeal has now expired; and said titles and submission clause now remain as they were originally fixed and determined.

It is contended by plaintiff in error that the titles and submission clause were not fixed and determined within the meaning of the act until the time for appeal had expired. On the other hand, it is contended by defendants in error that said titles and submission clause were fixed and determined January 31, 1950, and that the

sponsors of the petition were thereafter authorized to circulate said petition.

The sole question now is, When were the titles and submission clause fixed and determined?

We are not now called upon to decide what effect, if any, a successful appeal would have had on the determination by the statutory board as to when such titles and submission clause were finally fixed and determined or what would be the effect if the petition was circulated before such appeal was completed. It is conceded here that all parties concerned are satisfied with the titles and submission clause and that the only determination thereof in the instant proceeding took place on January 31, 1950. The action of the board is made final subject to the right of appeal, which was never taken. It is interesting to note that not only the commencement of the period for affixing signatures, but also the time established for all other statutory procedures, relates back to the date when the titles and submission clause were fixed and determined by the statutory board. The statute provides that publication shall be completed within thirty days from "the date the titles and submission clause * * * have been fixed and determined as hereinbefore provided." Also the time for protest by any qualified elector is fixed at forty days "after such titles and submission clause have been fixed and determined."

We, therefore conclude, under the circumstances here present, and in the light of the statute considered in its entirety, that the titles and submission clause here considered were fixed and determined within the meaning of the statute on January 31, 1950, and that the petition herein was circulated within the time specified by law.

The judgment is accordingly affirmed.

Mr. Justice Moore dissents.