525 A.2d 825

John G. Wolfe, Appellant *v.* Clem C. Switaj and
Winnie Williams, Appellees.

Argued April 22, 1985, before Judges DOYLE, COLINS and PALLADINO, sitting as a panel of three.

*John C. Wolfe,* for appellant.

*Karen M. Balaban, Balaban and Balaban,* for appellee.

OPINION BY JUDGE DOYLE, May 2, 1985:

This is an appeal from a decision and order of the Court of Common Pleas of Cumberland County which dismissed a petition to set aside the nomination petitions of Clem C. Switaj and Winnie Williams for the office of Jury Commissioner on the Democratic ticket. John G. Wolfe (Objector) has raised numerous challenges to the notarization of the nomination petitions as well as to the information written on the petitions by the individual electors.

### Respondent Switaj

Respondent Switaj, who needs two hundred fifty signatures on her nominating petitions, obtained two hundred eighty-five signatures. Fifteen signatures were stipulated to as being improper in some manner leaving a total of two hundred seventy signatures.[1] Objectors

---

[1] The trial court accepted a stipulation that ten names which were duplicates were to be struck but due to an apparent clerical oversight, these names were not in fact struck.

contend first that Linda K. Otto-Wolfe, who notarized ten affidavits of circulators, changed her name because of marriage and failed to notify the Secretary of the Commonwealth of her name change within thirty days as is required by Section 10 of The Notary Public Law, Act of August 21, 1953, P.L. 1323, *as amended,* 57 P.S. §156. This failure to notify the Secretary has been stipulated to. We are of the view, however, that this requirement of notification is merely for the convenience of the Secretary and does not abrogate the notary's power. Our position in this matter is supported by the implementation comment to Section 10 which states:

> Section 10 requires notification when a notary's name is changed and is amended to eliminate the special provision in the case of the marriage or divorce of a female notary but to provide for a public record when a notary notifies the Secretary of the Commonwealth of any name change. Since a woman may resume her maiden name without a court decree, and since marriage no longer carries with it automatic change of name, *these amendments* [1978] *simply insure that* if a notary of either sex changes his name, *a public record will be made* of this fact. (Emphasis added.)

Additionally, Section 10 specifically states that a notary whose name changes because of marriage "may continue to perform official acts, in the name in which he or she was commissioned." Accordingly, we do not believe that the circulators' affidavits notarized under the notary's maiden name are defective at all and, hence, no amendment is necessary.

Objector next maintains that two notary publics also signed nomination petitions as electors and therefore that their notarizations of the circulators' affidavits do not comport with the requirements of the Pennsylvania Election Code (Election Code), Act of June 3, 1937,

P.L. 1333, *as amended,* 25 P.S. §§2600-3591 that a circulator's signature on the nominating petition be properly notarized. Examination of the nominating petitions reveals that it is the *circulator's affidavit* which is notarized, not the signatures of the individual electors. We therefore believe that a notary's signing a nomination petition as an elector does not invalidate her notarial act on a nomination petition. We thus expressly reject Objector's argument that merely by being a signatory, the notary has a "direct interest" in the transaction which would prohibit notarization under Section 19(e) of The Notary Public Law, 57 P.S. §165(e). *Citizens Committee v. Board of Elections,* 470 Pa. 1, 367 A.2d 232 (1976), which Objector cites, is not helpful. The notary publics in *Citizens Committee* were *actively involved* in an attempted recall election; they did much more than sign the recall petitions in their individual capacities as qualified electors. The mere signing of a petition is impliedly *acceptable* under *Citizens Committee* wherein Chief Justice BENJAMIN JONES stated, *"when one steps beyond the point of signing his name to a petition* and actually solicits other signatures, *he has more than a general interest as a citizen in the outcome." Id.* at 23, 367 A.2d at 243. Accordingly, the notarial acts were proper.

Objector next contends that with respect to two petitions, circulators' affidavits are lacking because the notary publics did not indicate their political subdivisions as required by Section 13 of The Notary Public Law, 57 P.S. §159. This is an amendable defect and, contrary to Objector's argument, we find evidence of record which would support an amendment under the rationale of *Elliott Nomination Petition,* 26 Pa. Commonwealth Ct. 20, 362 A.2d 438, *affirmed* 466 Pa. 463, 353 A.2d 446 (1976). Specifically, the notarial seal, is, itself, evidence from which an amendment may be allowed. We note that although the trial court permitted

this defect to be amended within six days, no later *finding* was made as to whether such amendment in fact occurred. Therefore, we must remand for a *finding* on this point.[2]

Although a remand is necessary, we will in the interest of time, consider Objector's other challenges to Respondent Switaj's petition. As we noted earlier, it is stipulated that ten duplicate signatures must be struck (the ten electors had previously signed Respondent Williams' petition); it is also stipulated that one signer was a Republican and that that name must be struck. The trial court also found credible testimony that four signers were not registered, bringing the total to fifteen names which must be struck. With respect to the other allegations that electors did not sign their signatures as those signatures appear on their registration cards or did not properly indicate their boroughs or townships, it is our view that a mailing address or a signature not identical to that appearing on the registration card is not improper and hence does not require amendment *absent an allegation that the elector is not, in fact, the signer or that the elector does not, in fact, live at the noted address. No such allegations are made here.* Thus, no amendment is necessary.

Finally, Objector attacks dates altered for four signatures and the use of ditto marks corrected by persons

---

[2] Respondent Switaj's brief suggests that the omission of the political subdivision from the notarization was amended. We note from our examination of the challenged petitions that someone has placed a notary public's stamp containing a political subdivision under the notary public's signature. This Court has no way of discovering how or when this stamp came to be placed thereon. Technically, because the trial court made no finding on the propriety of the alleged amendment, this appeal is interlocutory. But because of the time constraints and the upcoming primary election we will disregard this error and consider as completely as possible the issues raised.

unknown with respect to three signatures. The facts of the alteration and the use of ditto marks were stipulated to by Respondent Switaj. No evidence was presented which would clarify these matters or which would permit amendment under *Elliott*. These seven names, must therefore be struck.

Accordingly, we are left with the following calculations:

| | |
|---|---|
| 285 | Initial Signatures |
| -10 | Duplicates |
| - 4 | Not registered |
| - 1 | Registered Republican |
| - 3 | Use of ditto marks |
| - 4 | Dates altered |
| 263 | Subtotal |

Petition sheet numbers five and six, in which the notary omitted the political subdivision, contain twenty-two and twenty-five names respectively (minus one name already struck as a duplicate). Therefore two hundred sixty-three signatures remain of which forty-six *may be* invalid. If these forty-six signatures are determined to be invalid because the trial court finds the amendments were not proper, Respondent Switaj's total valid signatures would fall below the requisite two hundred fifty. Therefore, it is apparent that a remand is necessary for a determination as to whether the omitted political subdivisions were properly amended.

Based on the foregoing, we hold that the trial court correctly struck five names from Respondent Switaj's petition but erred in failing to strike the ten duplicates. The case is remanded for a finding on whether the notarizations which lacked a political subdivision have been properly amended.

### Respondent Williams

Respondent Williams likewise needs two hundred fifty signatures but has obtained four hundred forty. The

trial court struck twenty-two leaving a total of four hundred eighteen valid signatures.

Objector has alleged various defects in the notarization of Respondent Williams' petitions. As noted above, the fact that notary publics signed nomination petitions as electors does not invalidate their notarial acts with respect to those petitions, *Citizens Committee* and hence no amendment is needed. Objector also maintains that notary public Louise Donivan did not administer a candidate's oath to Respondent Williams on eleven of the petitions. Examination of the candidate's affidavit on the nomination petitions indicates that a candidate need only personally appear before the notary and "depose and say", *inter alia,* that he or she is a candidate for the particular office. The presentation of a completed form to the notary is a representation by the candidate which fulfills the "depose and say" requirement. We note additionally that the affidavit permits a candidate to either swear or affirm. Hence, we find no indication that an oath must be administered. Moreover, a candidate need sign only once and have *that* signature validly notarized. We note that even if the notarizations objected to were struck, Respondent Williams submitted two other affidavits notarized by Carolyn Cline which affidavits were not objected to on this basis.

This same reasoning applies to Objector's protest that oaths were not administered to circulators and that circulators did not sign their affidavits in the presence of notaries. There is nothing to preclude a circulator from affirming an act done out of the notary's presence. Accordingly, no amendment is needed.

Next, objector contends that on petition sheet number one, fourteen names were obtained by someone other than the affiant. A circulator need not be the person who makes the affidavit, but, the affidavit must be made by one with knowledge of the facts set forth in Section 909 of the Election Code, 25 P.S. §2869. *Taylor*

*Appeal,* 46 Pa. Commonwealth Ct. 260, 406 A.2d 1168 (1979). In the instant case, the affiant admitted under oath before the trial court that he did not have the requisite knowledge with respect to most of the fourteen signatures. These fourteen names must therefore be struck and the trial court erred in failing to do so.[3]

Next, Objector contends that certain notarial acts lacked an indication of the political subdivision of the notary and are therefore invalid. As noted above, the presence of the notary's seal is sufficient evidence to allow amendment of this matter. As with Respondent Switaj, however, the trial court made no finding on whether such amendment occurred. But, the failure to make this finding with respect to Respondent Williams is harmless error inasmuch as Respondent Williams has sufficient signatures even if all signatures on the petitions lacking the notary public's political subdivision are struck. (Sheet number four — forty-six names and sheet number 15 — forty names).

Objector further contends, as he did with respect to Respondent Switaj, that electors who had signed the petitions improperly designated their boroughs or townships and that their names on the petitions did not exactly correspond with their signatures on their voter registration cards. As was the case with Respondent Switaj, there is no allegation that the electors did not live at the stated addresses or that they were not, in fact, the electors. Thus, we find no impropriety which would require an amendment.

Finally, there are objections based upon the following:

(a) Signature appearing subsequent to the date the circulator's affidavit was dated — 1 person;

_____

[3] We could remand for a trial court finding as to whether the affiant credibly testified as to some of the fourteen signatures, but the number of signatures obtained by Respondent Williams makes this unnecessary.

(b) Signatures appearing subsequent to the last date for signing petitions — three persons;

(c) Wrong addresses — four persons;

(d) Use of ditto marks — two persons;

(e) Signature without a date — one person.

(f) Candidate identified on nomination petition as Winnie Williams "Jury Comm". — nine persons.

We need not consider these issues because even if all these names be struck, Respondent Williams still retains sufficient signatures to meet the requirement of two hundred fifty as can be seen from the following calculations:

```
  440   Initial Signatures.
-   6   Not registered Democrats.
-   5   Illegible.
-   1   Registered Republican.
- 10   Persons signed petitions twice.
- 14   Affiant could not attest to.
-   4   Wrong address.
-   1   Signed after date circulator signed.
-   3   Signed after last day for signing.
-   2   Ditto marks.
-   1   No date of signing.
-   9   Petition identifies candidate as Winnie
        Williams "Jury Comm".
- 86   Notary did not indicate political subdi-
        vision.
_____
  298   Total Valid Signatures
```

From these calculations it can be seen that Respondent Williams retains two hundred ninety-eight valid signatures. She needs only two hundred fifty to qualify, and therefore, her petition withstands Objector's petition to set aside.

## ORDER

Now, May 2, 1985, the Order of the trial court dismissing the petition to set aside the nomination petition

10

of Clem C. Switaj is hereby vacated and the case is remanded to the trial court for further proceedings consistent with this opinion. Jurisdiction is relinquished.

ORDER

Now, May 5, 1987, the prior opinion in this election case is hereby directed to be reported and the docket shall be amended accordingly. The Chief Clerk is directed to transmit copies of said opinion to the entities on the official opinion distribution list.