**Harry GRIFF and Candi Clark, Plaintiffs–Appellants,**

v.

**CITY OF GRAND JUNCTION, acting by and through Stephanie Tuin, Grand Junction City Clerk; Diane Schwenke; and SLB Enterprises, LLC, d/b/a Brady Trucking, Defendants–Appellees.**

No. 09CA2764.

Colorado Court of Appeals, Div. IV.

Dec. 23, 2010.

Rehearing Denied Jan. 27, 2011.

Griff, Larson, Laiche, Brennan & Wright, Harry Griff, Grand Junction, Colorado, for Plaintiffs–Appellants.

John Shaver, City Attorney, Shelly Dackonish, Senior Staff Attorney, Grand Junction, Colorado, for Defendant–Appellee City of Grand Junction.

Hoskin Farina & Kampf, P.C., Michael J. Russell, Jarrod W. Person, Grand Junction, Colorado, for Defendants–Appellees Diane Schwenke and SLB Enterprises, LLC.

Opinion by Judge BOORAS.

Appellants, Harry Griff and Candi Clark, appeal the district court's order affirming the invalidation of signatures on a petition to suspend implementation of a zoning ordinance and denying an opportunity to cure those signatures. We reverse and remand.

## I. Background

Appellee SLB Enterprises, LLC, d/b/a Brady Trucking, purchased property in Mesa County, Colorado, in 2006 and entered into an agreement with the City of Grand Junction to annex the property to the city. In September 2008, the city council voted to zone a portion of the property as "light industrial" and a portion as "industrial/office."

Appellants prepared a petition to suspend the implementation of the zoning ordinance. Under Section 136 of the Grand Junction city charter, an ordinance shall be suspended if, within thirty days after the ordinance is passed, citizens submit a petition with signatures numbering at least ten percent of the city's registered electors who cast a vote for governor in the last gubernatorial election. If the petition contains the requisite number of valid signatures (in this case, 1,860), the city council must reconsider the ordinance and either repeal it or submit it to a citywide vote.

Ms. Clark helped draft the petition, arranged for its printing with a company she owned, participated in press interviews about the petition efforts, circulated two petition sections, and signed the petition herself as an elector. As a licensed notary public, Ms. Clark notarized the petition circulators' attestations on several petition sections that other people had circulated, including a petition section that she had signed as an elector. After the petition had been submitted to the city clerk for review, she also was designated as a petition representative.

The petition was filed with the city clerk, where 1,864 signatures were certified as valid on November 10, 2008. Appellee Diane Schwenke filed a protest to the clerk's certification under section 31–11–110(1), C.R.S. 2010. The clerk conducted a protest hearing and then ruled, on January 16, 2009, that section 12–55–110(2), C.R.S.2010, precluded Ms. Clark from notarizing the circulators' attestations because of her extensive personal involvement with the petition effort. However, the clerk decided that the statute required invalidation of only the petition section that Ms. Clark had signed as an elector, resulting in a reduction to only 1,846 signatures, which was insufficient to suspend the implementation of the zoning ordinance.

Although the city charter provided for a ten-day period to cure defective signatures on a petition if the city clerk did not certify a sufficient number of signatures at the outset, the city clerk opined in a letter to appellants that they did not have the same right to cure following a protest hearing. Nonetheless, ten days after the city clerk's protest ruling, appellants submitted, among other things, a new attestation and notarization for the petition section Ms. Clark had signed. The city accepted but has not reviewed these materials.

Appellants filed a complaint in district court under C.R.C.P. 106 challenging the city clerk's rulings under Rule 106(a)(4) and requesting under Rule 106(a)(2) that the district court order the city clerk to process appellants' cure documents. Ms. Schwenke also filed a complaint in district court asserting several grounds for invalidation of the petition. The district court consolidated the two cases, upheld the clerk's rulings and denied appellants' request for the city to review their updated submission, holding that appellants had no ten-day cure period after those rulings issued. The court declined to consider the issues raised in Ms. Schwenke's complaint as its ruling rendered them moot. This appeal followed.

## II. Validity of Petition Signatures

Appellants first claim that the city clerk abused her discretion by rejecting Ms. Clark's notarization and invalidating the section of the petition that she both signed as an elector and notarized. They argue that the clerk misapplied Colorado's notary disqualification statute in reaching her decision. We agree.

### A. Standard of Review

In a Rule 106(a)(4) appeal, we review a lower governmental or judicial body's decision directly to determine whether that body exceeded its jurisdiction or abused its discretion. C.R.C.P. 106(a)(4); *Ad Two, Inc. v. City & Cnty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo.2000) (emphasizing that appellate court is to review

administrative decision, not district court's ruling). The misapplication or misinterpretation of applicable law constitutes an abuse of discretion. *Bd. of Cnty. Comm'rs v. Conder,* 927 P.2d 1339, 1343 (Colo.1996); *Alward v. Golder,* 148 P.3d 424, 428 (Colo.App.2006). We must affirm any of the city clerk's findings of fact that are supported by some evidence in the record. *Ross v. Fire & Police Pension Ass'n,* 713 P.2d 1304, 1308 (Colo.1986).

## B. Colorado's Notary Disqualification Statute

The validity of Ms. Clark's notarization turns on interpretation of section 12–55–110(2), which prohibits notaries public from performing notarial acts in connection with transactions in which the notary has a disqualifying interest. One type of disqualifying interest arises when a notary is "named, individually, as a party to the transaction." § 12–55–110(2)(b), C.R.S.2010. This phrase is not defined by statute and has yet to be interpreted by Colorado courts in any reported opinion.

 When interpreting a statute, we look first at the plain meaning of the words and apply them as written if they are clear and unambiguous. *Slack v. Farmers Ins. Exch.,* 5 P.3d 280, 284 (Colo.2000). The primary goal of statutory interpretation is to give effect to legislative intent. *In re Marriage of Davisson,* 797 P.2d 809, 810 (Colo. App.1990) (citing §§ 2–4–203 and 2–4–212, C.R.S.2010). If the statutory language is ambiguous, we will consider legislative history and the potential consequences of a particular interpretation. *Buckley v. Chilcutt,* 968 P.2d 112, 117 (Colo.1998).

### 1. Plain Meaning of Notary Disqualification Statute

 While the city clerk provided a well-reasoned interpretation of the phrase "party to the transaction," she did not properly consider the significance of the words "named, individually." This statute must be construed in a way that gives effect to every word written, not one that renders a term or terms superfluous. *Slack,* 5 P.3d at 284; *City & Cnty. of Denver v. Taylor,* 88 Colo.

89, 95, 292 P. 594, 596 (1930) ("[W]e are not to presume that the legislative body used the language idly...").

The city clerk defined "transaction" as the "signing and representation of the petitions," and concluded that Ms. Clark's role in the petition efforts made her a "party to the transaction" within the meaning of section 12–55–110(2)(b). The clerk reasoned that notaries can inadvertently disqualify themselves by "assum[ing] too many roles"—here, printing the petition, signing it personally, circulating certain sections, and designating herself as a petition representative. Her decision cited two cases from other states that invalidated petition sections on the basis of notaries' overall involvement with the petition effort. *See Howell v. Tidwell,* 258 Ga. 246, 368 S.E.2d 311 (1988); *Citizens Comm. to Recall Rizzo v. Bd. of Elections,* 470 Pa. 1, 367 A.2d 232 (1976).

However, section 12–55–110(2) differs in important ways from the notary disqualification statutes in Georgia and Pennsylvania. Georgia's statute, cited in *Howell v. Tidwell,* disqualifies notaries who have signed or are "a party to the document or transaction" to be notarized. Ga.Code Ann. § 45–17–8(c)(2) (West 2010), *cited in Howell,* 368 S.E.2d at 312–13. Pennsylvania's notary disqualification statute, cited in *Rizzo,* disqualifies a notary who is "a party directly or pecuniarily interested." 57 Pa.Stat.Ann. § 165(e) (West 2010), *cited in Rizzo,* 367 A.2d at 242–43. Both statutes, and accordingly the cited cases applying them, look generally at whether the notary has become so entangled in the transaction that he or she has become a "party" to it. *E.g., Rizzo,* 367 A.2d at 243 ("They were advancing their own interests by ensuring the success of their efforts and the achievement of their political goals."). The city clerk treated Colorado's statute similarly, examining Ms. Clark's overall interest in the petition.

On the contrary, the Colorado statute disqualifies those notaries who are *"named, individually,* as a party to the transaction." § 12–55–110(2)(b) (emphasis added). These words narrow the scope of disqualification to those transactions where the notary's inter-

est is apparent from being named on the face of the document to be notarized.

Courts have maintained that being "named" requires some definitive identification. *E.g.*, *Lackey v. McDowell*, 262 Ga. 185, 415 S.E.2d 902, 903 n. 3 (1992) ("By 'named' we mean being identified either by proper name or such other description as leaves no question of the identity of the party . . . ."); *Waterwatch of Ore., Inc. v. Boeing Agri–Industrial Co.*, 155 Or.App. 381, 963 P.2d 744, 746 (1998) (emphasizing that for a party to be "named" requires an affirmative act, something more than implicit designation as a party). This comports with the legal definition of "name" as a "word or phrase identifying or designating a person or thing and distinguishing that person or thing from others." *Black's Law Dictionary* 1119 (9th ed.2009). "Named" indicates something more than mere association or involvement.

Therefore, because the words of section 12–55–110(2)(b) function to disqualify only the notaries who are designated by name on the face of the document they notarized, we hold that the city clerk abused her discretion by considering Ms. Clark's roles in printing the petition, giving media interviews, and being a general advocate for the protest effort. These actions did not result in Ms. Clark being "named, individually, as a party to the transaction." Rather, we must examine the manner in which her name was placed on the invalidated petition section and determine whether such placement made her a "party to the transaction."

### 2. Notary Disqualification in Petition Process

The city clerk also concluded that Ms. Clark's signature as elector made her "individually named" to the transaction and precluded her from notarizing that petition section. This, combined with a desire to give effect to the most signatures possible, was the clerk's reason for invalidating only the section that Ms. Clark signed individually as an elector, rather than all the sections she notarized. Therefore, we must consider whether signing a petition as an elector makes one a named party to that transaction, and conclude that it does not.

Although section 12–55–110 does not define "transaction," similar notary laws were targeted at transactions that are more typically notarized, such as real estate purchases, loan documents, and wills. *See* Carole Clarke & Peter Kovach, *Disqualifying Interests for Notaries Public*, 32 J. Marshall L.Rev. 965, 966–67 (1999) (opining that notary disqualification laws were crafted "[b]ecause of the notary public's role in financial transactions"). In those transactions, the "named" parties (buyer-seller, lender-borrower, testator-beneficiary) are easily determinable, because they are typically those with a substantial stake in the outcome. For this reason, in the case of a petition, one who is named as the subject matter of the petition (for example, a political nominee or a sponsor whose name is printed on the petition for all signatories to view) should be disqualified from notarization, whereas a person who merely signs it as an elector should not. This case does not require us to define "transaction," and we decline to do so.

Although Pennsylvania's notary disqualification statute differs significantly from Colorado's, Pennsylvania case law regarding the level of involvement required before a person is "directly interested" is instructive in determining whether one is "named" in the transaction. For example, political candidates are disqualified as notaries to their own nomination petitions. *In re Berg*, 973 A.2d 447, 450 (Pa.Commw.Ct.2009) (distinguishing Pennsylvania cases where notaries were signors, circulators, or family members of candidates, which did not rise to the level of interest that required disqualification), *aff'd*, 601 Pa. 85, 971 A.2d 486 (2009). Conversely, signing one's name as an elector does not make that person "directly interested" in the transaction, because doing so only indicates a "general interest as a citizen." *See Wolfe v. Switaj*, 106 Pa.Cmwlth. 1, 525 A.2d 825, 826–27 (1985). Thus, we do not believe that a person becomes a named party to a petition simply by signing it.

The petition requirement serves as a "screening" device, testing public support before money is expended on ballot preparation. *Planned Parenthood v. Campbell*, 232 P.3d 725, 729–30 (Alaska 2010); *see also*

*Chilcutt,* 968 P.2d at 117 (requiring "that an initiative [in Colorado] must demonstrate a certain level of support before it may appear on the ballot"). Accordingly, Colorado permits electors who sign petitions like these to withdraw their signatures at any time prior to filing. § 1–40–109(3), C.R.S.2010. These signatures do not so tie electors to the petition as to make them "named, individually, as a party" to it.

█ Appellees point out that the Colorado Secretary of State promulgated a guide to the initiative and referendum process in 2007–2008 directing that those who sign a petition section cannot also notarize the circulator affidavit of that section. Colo. Dep't of State, *Initiative and Referendum Procedures and Guidelines* 7 (2007–2008), *available at* http://www.cde.state.co.us/artemis/s1_6/s18in52007internet.pdf (citing § 12–55–110(2)). Although we give due deference to the Secretary of State's interpretation of statutes relevant to its own operations, that interpretation is not binding on appellate courts. *See Huddleston v. Grand Cnty. Bd. of Equalization,* 913 P.2d 15, 17 (Colo.1996) (applying this standard to legal analyses found in agency-authored manuals); *Patterson Recall Committee, Inc. v. Patterson,* 209 P.3d 1210, 1217 (Colo.App.2009).

Furthermore, the most recent edition of this guide—which uses much of the same language as the 2007–2008 guide—contains no language similar to that upon which appellees rely. Colo. Dep't of State, *Initiative Procedures & Guidelines: A Citizen's Guide to Placing an Initiative on the Ballot* (2009–2010), *available at* http://www.sos.state.co.us/pubs/elections/Initiatives/files/InitiativePetitionManual.pdf. Nor does the current Secretary of State manual for circulator training mention any such conflict, even though it provides reasons why petition sections could be rejected based on invalid notarizations. Colo. Sec'y of State, *Circulation of Initiative Petitions: Training Guide for Petition Entity Representatives & Petition Circulators* 6–12 (2009–2010), *available at* http://www.sos.state.co.us/pubs/elections/Initiatives/files/InitiativePetitionCirculatorTraining050310.pdf. Given this inconsistency, as well as the casual nature of the brief statement in the previous guide, we decline to defer to the language in the 2007–2008 manual. *Three Bells Ranch Assocs. v. Cache La Poudre Water Users Ass'n,* 758 P.2d 164, 172 (Colo.1988) (refusing to give deference where an administrative construction of a statute has not been uniform).

### 3. Colorado Policy on Ballot Access

Because nothing in section 12–55–110 denotes a legislative intent to abrogate existing law, we consider this statute in conjunction with longstanding principles in Colorado case law. *See Robbins v. People,* 107 P.3d 384, 387–88 (Colo.2005); *Allen v. People,* 175 Colo. 113, 116, 485 P.2d 886, 887–88 (1971). Our interpretation accords with Colorado's long-time adherence to the importance of the initiative and referendum process. *See, e.g., Colorado Project–Common Cause v. Anderson,* 178 Colo. 1, 5, 495 P.2d 220, 221 (1972) ("[Initiative provisions] must be liberally construed to effectuate their purpose and to facilitate the exercise by electors of this most important right reserved to them by the constitution.") (citing *Yenter v. Baker,* 126 Colo. 232, 248 P.2d 311 (1952); *Baker v. Bosworth,* 122 Colo. 356, 222 P.2d 416 (1950)).

Colorado courts have been persistently reluctant to interpret statutes in a technical way that may hamper the people's right to put certain issues to a popular vote. *See Loonan v. Woodley,* 882 P.2d 1380, 1384 (Colo.1994). Petitions that substantially comply with the relevant statutes are to be given effect under Colorado law. *See Fabec v. Beck,* 922 P.2d 330, 341 (Colo.1996). Although Colorado may regulate the petition process to prevent fraud and mistake, *Campbell v. Buckley,* 203 F.3d 738, 741 (10th Cir. 2000), regulatory measures "may not unduly diminish the rights to that process." *Comm. for Better Health Care for All Colo. Citizens v. Meyer,* 830 P.2d 884, 893 (Colo.1992).

We agree with the city clerk that "[t]here are minimum standards that must be met." But considering our construction of section 12–55–110(2)(b) and previous cases interpreting Colorado law, we believe that the same person can sign and notarize a single petition section without unjustifiably increasing the risk of fraud in the petition. Colorado courts

have, for example, strictly enforced the requirement that a petition contain a minimum number of verifiable signatures by registered electors, because this requirement is stated in the Colorado Constitution and is therefore more than "technical." *Chilcutt*, 968 P.2d at 117; *accord Clark v. City of Aurora*, 782 P.2d 771, 778–79 (Colo.1989). The requirement that circulators complete a notarized affidavit has also been strictly applied, because "it emphasizes the significance of the personal responsibility *circulators* must assume to prevent irregularities in the initiative process." *Comm. for Better Health Care for All Colo. Citizens v. Meyer*, 830 P.2d at 894 (emphasis added).

However, courts have resisted invalidating petitions on the basis of other, more technical defects. *E.g., Independence Inst. v. Buescher*, 718 F.Supp.2d 1257 (D.Colo.2010) (granting preliminary injunction against enforcement of a Colorado statute that prohibits paying circulators on a per-signature basis because it unconstitutionally hampers access to ballot); *McClellan v. Meyer*, 900 P.2d 24, 34 (Colo.1995) (validating petition signatures even though circulator's signature on affidavit had different date than notarization); *Billings v. Buchanan*, 192 Colo. 32, 34–35, 555 P.2d 176, 177–78 (1976) (upholding the validity of a petition that was cut apart and reassembled after it had been signed and notarized).

We conclude that the narrow language in section 12–55–110(2)(b) limits notarial disqualification to the most suspect situations, such as where a candidate notarizes his or her own nomination petition. This interpretation results in the invalidation of fewer signatures and provides more ready access to the ballot, in accordance with public policy in Colorado. *See Independence Inst.*, 718 F.Supp.2d at 1273 (enjoining enforcement of a statute that limits proponents' ability to get initiative or referendum on the ballot because of the importance of this form of political speech). We do not think that a notary signing a petition as an elector so calls into question his or her truthfulness in notarizing the circulator's affidavit as to produce a high risk of fraud. *See Loonan*, 882 P.2d at 1384 (warning against ·interfering with citizens'

initiative and referendum rights any more than "necessary to fairly guard against fraud and mistake").

Accordingly, we hold that signing a petition as an elector does not make a person "named, individually, as a party to the transaction" under section 12–55–110(2)(b). The city clerk therefore abused her discretion by ruling that Ms. Clark had a disqualifying interest and by invalidating the petition section that Ms. Clark notarized.

## III. Appellants' Other Claims

Appellants also claim that the city clerk should be estopped from invalidating the petition section, and that the district court should have required the city clerk to review cure documents submitted by appellants. In light of our determination that the city clerk incorrectly invalidated eighteen signatures, the estoppel issue is moot, and we express no opinion on the viability of this issue, in the event that on remand the trial court finds merit in any of Ms. Schwenke's remaining claims. Additionally, we need not reach the right to cure, and express no opinion as to how that issue may be resolved on remand.

## IV. Attorney Fees

Because we find merit in appellants' argument, appellees' request for attorney fees is denied. *See* § 13–17–102(4), C.R.S.2010; *Castillo v. Koppes–Conway*, 148 P.3d 289, 292 (Colo.App.2006) (explaining that attorney fees are appropriate under section 13–17–102(4) only where the case was frivolously filed or frivolously argued).

## V. Conclusion

The order is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion and to address any remaining claims in either of the consolidated cases.

Judge WEBB and Judge MILLER concur.