COLORADO COURT OF APPEALS
 2016 COA 40
 
 

Court of Appeals No. 15CA0109
Boulder County District Court No. 14CV30911 
Honorable Ingrid S. Bakke, Judge

Brian Rowland,
Plaintiff-Appellant,
v.
Department of Revenue, Division of Motor Vehicles,
Defendant-Appellee.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS
Division VII
Opinion by JUDGE BERGER
Richman and Dunn, JJ., concur
Announced March 10, 2016

Frechette Law Office, Franz P. Frechette, Nederland, Colorado, for Plaintiff-Appellant
Cynthia H. Coffman, Attorney General, Laurie Rottersman, Senior Assistant Attorney General, Denver, Colorado, for Defendant-Appellee
 
¶1       Plaintiff, Brian Rowland, appeals from the district court’s judgment affirming the revocation of his driver’s license by the Department of Revenue (department) for "driving with an excessive amount of alcohol in his . . . body" in violation of section 42-2-126, C.R.S. 2015. Because we conclude that the hearing officer improperly admitted an unsworn report of Rowland’s blood alcohol content, we reverse the district court’s judgment and remand for further proceedings.
I. Relevant Facts and Procedural History
¶2       A police officer pulled Rowland over after she saw him driving at inconsistent speeds and crossing the yellow dividing line and the fog line. While the officer spoke to Rowland, she smelled alcohol on his breath, noticed that his eyes were red, bloodshot, and watery, and noticed that his speech was slow and slurred. When asked whether he had been drinking, Rowland said he had had one beer. The officer asked Rowland to get out of his vehicle and saw, as he stood, that he was unsteady on his feet. Rowland unsatisfactorily performed several roadside maneuvers.
¶3       The officer arrested Rowland for driving under the influence and, in accordance with the implied consent law, section 42-4-1301.1, C.R.S. 2015, gave him a choice to take a breath test or a blood test to determine his blood alcohol content (BAC). Rowland chose the blood test.
¶4       At the police station, an EMT drew a sample of Rowland’s blood while the officer watched. The officer then delivered the sample to a private laboratory for a blood alcohol analysis. According to the blood test, Rowland’s BAC was 0.158, almost twice the legal limit of 0.08. § 42-2-126(3).[1]
¶5       As required by the license revocation statute, section 42-2-126, the officer submitted an affidavit to the department, which reported the BAC test results. The department revoked Rowland’s license for nine months, pursuant to section 42-2-126(3)(a)(I)(A), which requires revocation for driving with a BAC in excess of 0.08. Rowland requested and was granted an administrative hearing.
¶6       Evidence admitted at the hearing included the officer’s
affidavit and testimony and the BAC test report. The analyst who performed Rowland’s blood test did not testify, nor did Rowland.
¶7       The hearing officer affirmed the revocation, finding that the department had proved by a preponderance of the evidence that Rowland drove with a BAC in excess of 0.08.
¶8       Rowland appealed the hearing officer’s decision to the district court. The district court rejected the hearing officer’s conclusion that the BAC test report was properly admitted at the hearing. Instead, the district court held that the BAC test report was an affidavit that had to meet the requirements of section 42-2-126(8) and that those requirements were not met. Nevertheless, the district court affirmed the revocation because it concluded that the test results, though not the BAC test report itself, were admissible through the officer’s testimony and that there was sufficient evidence in the record to uphold the revocation order.
II. Admissibility of the BAC Test Report
¶9       Rowland contends that a BAC test report prepared by a private organization (as opposed to a law enforcement agency) must comply with the affidavit requirements of section 42-2-126(8)(c). He claims because the report of his BAC test results did not comply, its admission into evidence at the revocation hearing was error. He further argues that because the BAC test report and its contents were the only evidence that his BAC exceeded 0.08, we must reverse the district court’s judgment and order reinstatement of Rowland’s license. Rowland raised this issue at the hearing, thus preserving it for appeal.
¶10       We agree with Rowland and the district court that the admission of a BAC test report prepared by a private organization must comply with the affidavit requirements of section 42-2126(8)(c), but we disagree with Rowland that the error in admitting the BAC test report necessarily requires reversal of the revocation order.
A. BAC Test Reports Must Comply With Affidavit Requirements
¶11       The question presented is whether a hearing officer may consider evidence (other than testimony at the hearing) from persons besides the driver and law enforcement officers when that evidence does not comply with the affidavit requirements contained in section 42-2-126(8)(c).
¶12       A driver whose license has been revoked may request an administrative hearing. § 42-2-126(7). At that hearing,
[t]he department shall consider all relevant evidence . . . including the testimony of any law enforcement officer and the reports of any law enforcement officer that are submitted to the department. The report of a law enforcement officer shall not be required to be made under oath, but the report shall identify the law enforcement officer making the report. The department may consider evidence contained in affidavits from persons other than the respondent, so long as the affidavits include the affiant’s home or work address and phone number and are dated, signed, and sworn to by the affiant under penalty of perjury.
§ 42-2-126(8)(c) (emphasis added).
¶13       The department contends that section 42-2-126(8)(c) permits consideration of evidence from non-law enforcement officers that is not contained in affidavits if the evidence is not intended to be presented in affidavit form. According to the department, the BAC test report was not intended to be an affidavit and was not an affidavit. Therefore, it was not required to comply with the affidavit requirements of the section.
¶14       Rowland, on the other hand, contends that the BAC test report was required to be submitted in affidavit form as a condition to its admission at the hearing and, because it was not, the hearing officer exceeded his statutory authority when he admitted the BAC test report and relied on it to revoke Rowland’s license.
¶15       Statutory interpretation presents a question of law this court reviews de novo. Bostelman v. People, 162 P.3d 686, 689 (Colo. 2007). In interpreting and applying statutes, our primary aim is to ascertain and effectuate legislative intent. Griff v. City of Grand Junction, 262 P.3d 906, 909 (Colo. App. 2010). A statute must be interpreted as a whole, giving consistent, harmonious, and sensible effect to each word and phrase. Catholic Health Initiatives Colo. v. City of Pueblo, Dep’t of Fin., 207 P.3d 812, 821 (Colo. 2009); Gallegos v. Colo. Ground Water Comm’n, 147 P.3d 20, 28 (Colo. 2006). If the plain language of a statute is susceptible of only one reasonable interpretation, then it is unambiguous, and we apply it as written. Griff, 262 P.3d at 909.
¶16       For several reasons, we disagree with the department’s interpretation.
¶17       If, as the department asserts, the BAC test report was admissible merely because it was not in affidavit form and thus did not trigger the statutory requirements, that result would contravene one of the express purposes of the statute. Section 42-2-126(1)(b) states the General Assembly’s intention "[t]o guard against the potential for any erroneous deprivation of the driving privilege by providing an opportunity for a full hearing." In other words, the statutory scheme is intended to provide for a prompt but fair revocation proceeding. Tate v. Colo. Dep’t of Revenue, 155 P.3d 643, 646 (Colo. App. 2007).
¶18       The department’s construction does not meet the General Assembly’s objective to provide for a "prompt but fair proceeding" because the statute could be too easily manipulated. Applying the department’s interpretation, a written statement from someone who is not the driver or a law enforcement officer and that does not contain indicia of reliability, such as the person’s signature, phone number, or address ― but was not "intended" to take the form of an affidavit ― would be admissible, but a statement that contains at least some (but not all) of those indices and was intended to take the form of an affidavit would not be admissible. Not only is such a construction nonsensical, but it inevitably would result in disputes over whether the offering party intended the statement to constitute an affidavit. Particularly given the General Assembly’s direction that it does not intend unreasonable results when it enacts statutes, § 2-4-201(1)(d), C.R.S. 2015, we cannot conclude that the department’s interpretation is reasonable. 
¶19       Instead, we conclude that there is only one reasonable interpretation of the statute: that, other than testimony presented at the hearing, if the department offers evidence from a non-law enforcement source, the evidence must be presented in affidavit form to be admitted at the hearing.2
¶20       In reaching this conclusion, we initially consider the definition of the word "affidavit" and then address what kind of evidence is "contained in affidavits" within the meaning of the statute.
¶21       The statute does not contain a definition of the word "affidavit," but the Colorado Supreme Court has defined an affidavit as "a signed, written statement, made under oath before an authorized officer, in which the affiant vouches that what is said is true." People v. Anderson, 828 P.2d 228, 231 (Colo. 1992) (quoting Otani v. Dist. Court, 662 P.2d 1088, 1090 (Colo. 1983)).
¶22       Applying this definition, we conclude that the statutory phrase "evidence contained in affidavits" refers to written statements. Thus, the department may consider, in addition to actual testimony given at the hearing, written statements from persons other than law enforcement officers or the driver, provided that those statements include that person’s home or work address and phone number, and are dated, signed, and sworn to by that person under penalty of perjury.
¶23       We must next determine whether the BAC test report is a written statement. We conclude that it is.
¶24 Black’s Law Dictionary defines "statement," in the context of evidence, as "[a] verbal assertion or nonverbal conduct intended as an assertion." Black’s Law Dictionary 1629 (10th ed. 2014). A "statement of fact" is "[a] declaration that asserts or implies the existence or nonexistence of a fact." Id.
 
¶25       The BAC test report asserts that Rowland’s BAC was 0.158. If this were a criminal proceeding, there is no question that the BAC test report would constitute a statement because the Colorado Supreme Court has held that these types of laboratory reports are testimonial statements, subject to the confrontation requirements of Crawford v. Washington, 541 U.S. 36 (2004). Hinojos-Mendoza v. People, 169 P.3d 662, 666 (Colo. 2007). 
¶26       There are many similarities between the laboratory report in Hinojos-Mendoza, which stated that a substance found in the defendant’s vehicle was cocaine, and the BAC test report at issue here: both reports were prepared at the direction of the police, the purpose of both tests was to analyze a substance (here blood) in connection with legal proceedings, and both reports were introduced to establish one of the elements of a criminal offense or civil violation with which the offender was charged. Id. at 667.
¶27       Had the department called the analyst who tested Rowland’s blood sample at the hearing, the analyst would have testified about the concentration of alcohol found in Rowland’s blood, which is the same information the BAC test report provided. In other words, the BAC test report and the lab technician’s testimony would have served a functionally identical purpose: to establish that Rowland was driving with a BAC in excess of 0.08. See Melendez-Diaz v. Massachusetts, 557 U.S. 305, 310-11 (2009) (holding that an affidavit is a testimonial statement because it is functionally identical to live, in-court testimony). We thus conclude that the BAC test report was a written statement admissible only upon compliance with the statute’s affidavit requirements. 
¶28       Because the parties agree that the BAC test report here did not comply with the statutory affidavit requirements, we conclude that the hearing officer exceeded his statutory authority in admitting the BAC test report. § 42-2-126(9)(b); see also § 24-4-106(7), C.R.S. 2015. To the extent the hearing officer relied on the BAC test report in determining that the department had proved by a preponderance of the evidence that Rowland drove with a BAC in excess of 0.08, the revocation cannot stand.
B. The Officer’s Testimony Reporting the BAC Test Results Was Independently Admissible
¶29       Rowland argues that because the BAC test report was inadmissible, the hearing officer also was prohibited from considering the report’s contents as reported in the officer’s affidavit and hearing testimony. We reject this argument.
¶30       A reviewing court must reverse the department’s revocation if, based on the administrative record, the court determines that the department exceeded its constitutional or statutory authority, made an erroneous interpretation of the law, acted in an arbitrary and capricious manner, or made a determination that is unsupported by the evidence. § 42-2-126(9)(b); see also § 24-4-106(7). The determinations concerning the weight to be given to the evidence are factual matters solely within the province of the hearing officer to decide as the trier of fact. Baldwin v. Huber, 223 P.3d 150, 152 (Colo. App. 2009).
¶31       Section 24-4-105(7), C.R.S. 2015, provides:
[W]hen necessary to do so in order to ascertain facts affecting the substantial rights of the parties to the proceeding, the person so conducting the hearing may receive and consider evidence not admissible under [the rules of evidence] if such evidence possesses probative value commonly accepted by reasonable and prudent men in the conduct of their affairs.
¶32       The Colorado Supreme Court has interpreted this statute to authorize the admission of sufficiently reliable and trustworthy hearsay evidence in license revocation proceedings as long as the evidence possesses probative value. Colo. Dep’t of Revenue v. Kirke, 743 P.2d 16, 21 (Colo. 1987). Indeed, such hearsay may constitute the sole evidence to establish an element in a revocation proceeding. Id.
 
¶33       The BAC test results had probative value; the results of a BAC test are essential to a determination that the driver’s BAC was in excess of 0.08. The only remaining question is whether the BAC test results, as testified to by the arresting officer and reported in the officer’s affidavit, were sufficiently reliable and trustworthy to permit their consideration by the hearing officer. We conclude that they were.
¶34       Blood tests which are completed in substantial compliance with the Colorado Department of Public Health and Environment’s rules and regulations are considered reliable. See Miller v. Motor Vehicle Div., Dep’t of Revenue, 706 P.2d 10, 11-12 (Colo. App. 1985). The record evidence supports the hearing officer’s findings that the procedures used to collect and analyze Rowland’s blood so complied. The officer who arrested Rowland observed the EMT collect Rowland’s blood sample; that same EMT attested that the sample was collected in accordance with rules and regulations prescribed by the Colorado Department of Public Health and Environment as stated in section 42-4-1301.1 and section 42-41304, C.R.S. 2015; and evidence at the hearing established the sample’s chain of custody. Moreover, the BAC test report, which the officer relied on in her testimony and affidavit, was signed by the analyst who tested the blood sample. See Indus. Claims Appeals Office v. Flower Stop Mktg. Corp., 782 P.2d 13, 18 (Colo. 1989) (listing factors to determine whether hearsay evidence is reliable, including whether the statement was written and signed).
¶35       Rowland argues that consideration of the blood test results when the BAC test report itself was inadmissible circumvents the statute. We disagree. There may be significant consequences to the exclusion of a BAC test report that does not comply with the affidavit requirements of the statute. Because the BAC test report was itself inadmissible, the department ran (and, given our disposition, runs) the risk that the hearing officer would not find sufficient the officer’s hearsay regarding the BAC test results. See Baldwin, 223 P.3d at 152.3
¶36       We conclude that to the extent that the hearing officer considered and relied on the officer’s affidavit and testimony concerning the BAC test results when making his revocation decision, the hearing officer did not exceed his authority, make an erroneous interpretation of the law, act in an arbitrary or capricious manner, or make a determination unsupported by the evidence.
C. Remand for Further Proceedings
¶37       Although we have concluded that the hearing officer was entitled to consider the BAC test results through the officer’s affidavit and testimony, we cannot determine from the record whether, or to what extent, the hearing officer relied on the inadmissible BAC test report itself in reaching his decision. Because we cannot determine on this record if the hearing officer would have reached the same revocation determination without the improper admission of the BAC test report itself, we must reverse the district court’s judgment with directions to remand the case to the hearing officer to make that determination.
III. Conclusion
¶38       The judgment of the district court is reversed with directions to remand the case to the hearing officer for the further proceedings directed above.
JUDGE RICHMAN and JUDGE DUNN concur.

[1] Technically, blood alcohol content is measured by the number of grams of alcohol contained in one hundred milliliters of blood, expressed as a percentage. It is customary to simply refer to the resulting decimal, such as 0.08, as the blood alcohol content. We follow the customary usage in this opinion.
[2] If the General Assembly is not satisfied with our interpretation of the statute, it is free to amend the statute to reject our interpretation. Pueblo Bancorporation v. Lindoe, Inc., 63 P.3d 353, 360 (Colo. 2003).
[3] As the district court correctly observed, Rowland could have subpoenaed the analyst and examined him regarding any discrepancies between the BAC test report and the officer’s affidavit and testimony. Rowland did not do so.